NEW YORK LIFE INSURANCE CO *v.* MODZELEWSKI.

1. INSURANCE—CONSTRUCTION OF APPLICATION BLANK.
    Application blank for life insurance prepared by insurer should be read most favorably to insured.

2. PHYSICIANS AND SURGEONS—INSURANCE—CHIROPRACTOR.
    Physician as term is used in application blank for life insurance *held,* to mean a legally licensed physician or doctor of medicine and not a chiropractor.

3. Insurance—Treatment by Chiropractor—Delivery of Policy. Chiropractor's treatment of insured prior to delivery of policy of life insurance *held*, not to render policy ineffective where application blank conditioned effectiveness of policy upon lack of treatment by a physician after medical examination.

4. Same—Facts Discovered Before Delivery of Policy. Evidence *held*, insufficient to require application of rule that discovery of facts by applicant for life insurance before delivery of policy, which render portions of application untrue, imposes duty to make full disclosure and afford basis for cancellation of policy.

Appeal from Wayne; Browne (Clarence M.), J., presiding. Submitted April 4, 1934. (Docket No. 21, Calendar No. 37,621.) Decided June 4, 1934. Rehearing denied July 2, 1934.

Bill by New York Life Insurance Company, a foreign corporation, against Claire L. Modzelewski to cancel a life insurance policy. Cross-bill by defendant against plaintiff for payment under the policy. Decree for defendant on cross-bill. Plaintiff appeals. Affirmed.

*Thomas A. E. Weadock,* for plaintiff.

*Nathaniel H. Goldstick* and *Paul J. Wieselberg,* for defendant.

North, J. By its bill of complaint, plaintiff, on grounds hereinafter stated, seeks cancellation of an insurance policy. By her cross-bill defendant prays that payment of the policy be decreed. Decree was in accordance with the prayer of the cross-bill and plaintiff has appealed.

The insured, Walter E. Modzelewski, was defendant's husband. On March 17 or 18, 1929, he made application to plaintiff company for a policy of life

insurance in the amount of $2,500. The insured was examined by plaintiff's physician March 19th. The examination disclosing no reason to the contrary, plaintiff's medical examiner reported the applicant as an acceptable risk. A policy was issued March 23, 1929, effective as of February 9, 1929. A receipt dated March 26th for the payment of the first premium was delivered by plaintiff's agent to defendant; and the policy was delivered not later than April 5, 1929. The application for the policy contained the following:

"That the insurance hereby applied for shall not take effect unless and until the policy is delivered to and received by the applicant, and the first premium thereon paid in full during his lifetime, *and then only if the applicant has not consulted or been treated by any physician since his medical examination.*"

At the time the application was signed by the insured he was engaged as a spot welder in an industrial plant. He remained in such employment until April 2, 1929; and the foreman testified that he "never noticed anything wrong with" insured prior to the day he quit. On that day the insured told his foreman "he was sick and was quitting." On March 23d, four days after the insurance company's physician examined the insured, he consulted a chiropractor, Leo A. Temrowski. He also called upon and was treated by this chiropractor on April 1, 3, and 6, 1929. From the testimony of the chiropractor it appears that the insured at that time had symptoms of pleurisy in the region of the heart, that he had loss of appetite, constipation, and "had not been feeling good for about a year. * * * I did not determine that he had tuberculosis, but I suspected it." April 5, 1929, the insured was exam-

ined at the Herman Kiefer hospital and a provisional diagnosis of tuberculosis resulted. This was verified April 28, 1929, by an examination of the patient's sputum. However, during the months of May, June, and July, 1929, he worked, but not steadily, in a butcher shop. There is testimony that he appeared to be well and healthy until July or August of that year. He died of pulmonary tuberculosis January 10, 1930. The certificate of death gave the duration of the disease as four months.

Cancellation is sought on the ground that the insurance did not become effective because, in violation of the application above quoted, the applicant consulted and was treated by a physician after his medical examination and prior to delivery of the policy. As against this contention the defendant asserts that under the law of Michigan a chiropractor is not a physician and hence treatment of the insured by a chiropractor did not prevent the policy becoming effective upon delivery. See *Erdman* v. *Great Northern Life Ins. Co.*, 253 Mich. 579, wherein it is held that a chiropractor is not a licensed physician or surgeon. Plaintiff contends that notwithstanding the holding just above noted a chiropractor should be held to be a "physician" within the meaning of the quoted portion of the application for insurance in the instant case. The application blank, like the insurance policy, was prepared by the insurance company; and hence it should be read in terms most favorable to the insured. So read, the word "physician" must be held to mean a legally licensed physician or doctor of medicine. Such is the meaning that a reading of the application would convey to the ordinary lay mind. Under our holding in *Erdman* v. *Great Northern Life Ins. Co.*, *supra*, a chiropractor is not a licensed physician. It fol-

lows that notwithstanding the insured consulted a chiropractor and was treated by him as above noted, the insurance became effective upon delivery of the policy.

Plaintiff also asserts the right to cancellation on the theory that the insured's representation in his application (March 17th or 18th) as to the condition of his health, was a material representation, and if the insured, prior to the delivery of the policy (not earlier than March 26th or later than April 5th), learned that such representation was contrary to the fact, he was obligated to so advise the insurance company; and that his failure to do so was a breach of good faith and a fraud that justifies cancellation. As to the facts material to plaintiff's contention, it relies upon the record showing that the insured consulted a chiropractor March 23d, and the policy was delivered on or between March 26th and April 5th. We will advert to this phase of the record shortly. As to the legal aspect of this phase of plaintiff's case it cites numerous authorities, and quotes and relies upon *Stipcich* v. *Metropolitan Life Ins. Co.*, 277 U. S. 311, 316 (48 Sup. Ct. 512), wherein it is said:

"For, even the most unsophisticated person must know that in answering the questionnaire and submitting it to the insurer he is furnishing the data on the basis of which the company will decide whether, by issuing a policy, it wishes to insure him. If, while the company deliberates, he discovers facts which make portions of his application no longer true, the most elementary spirit of fair dealing would seem to require him to make a full disclosure. If he fails to do so the company may, despite its acceptance of the application, decline to issue a policy, *Canning* v. *Farquhar,* 16 Q. B. D. 727; *McKenzie* v. *Northwestern Mutual Life Ins. Co.*, 26 Ga.

App. 225 (105 S. E. 720), or if a policy has been issued, it has a valid defense to a suit upon it.''

The *Stipcich Case* is cited and quoted in *New York Life Ins. Co.* v. *Abromietes*, 254 Mich. 622. We may concede the correctness of the legal aspect of plaintiff's contention, but the facts disclosed by this record render it inapplicable. The portion of the insured's application which plaintiff asserts was false is as follows:

"No. 8. Have you ever consulted a physician or practitioner for or suffered from any ailment or disease of, * * * b. The heart, blood vessels or lungs? No.

"No. 7F. Have you gained or lost weight in the last year? No.''

There is no competent testimony in this record tending to prove the insured had any knowledge that he had ever been afflicted with any of the physical ailments referred to in question eight quoted, nor does the record establish falsity of the insured's statement that he had neither gained nor lost weight. While the insured consulted a chiropractor before delivery of the policy, the testimony of this chiropractor discloses that the insured had not consulted him prior to March 23, 1929, that the insured had a "sharp, shooting pain just below his nipple on his left side," that the chiropractor suspicioned pleurisy, and later in his testimony he stated he suspicioned the patient had tuberculosis. However, the record does not disclose that the chiropractor advised the insured of his suspicions. It does not appear from the record that the insured prior to the time the policy was delivered was possessed of any information concerning his physical condition which he was in duty bound to communicate to the insur-

ance company. He had submitted to a physical examination by the company's physician, and, so far as appears from this record, had answered truthfully each inquiry made of the insured by the examiner. It was not until some time after the delivery of the policy that the insured was advised that he had tuberculosis. He continued to work for some months thereafter and his death did not occur until January 10, 1930. Plaintiff's case did not entitle it to cancellation and the circuit judge properly so held.

The decree entered in the circuit court awarding defendant the amount due on the insurance policy is affirmed, with costs.

NELSON SHARPE, C. J., and POTTER, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.