MUTUAL BENEFIT LIFE INSURANCE COMPANY *v.* ABBOTT.

1. TRIAL—NONJURY CASE—MOTION TO DISMISS—EVIDENCE—COURT RULES.

   The trial court disposes of a nonjury case on the merits when deciding a motion to dismiss after close of plaintiff's evidence and is not bound to view the evidence in the light most favorable to the party attacked, but it may weigh and determine the facts as well as consider the sufficiency of evidence (GCR 1963, 504.2).

2. INSURANCE—CONSTRUCTION OF QUESTIONS AND ANSWERS IN APPLICATION.

   Questions and answers in application for insurance ought to be construed liberally in favor of insured.

3. SAME—EVIDENCE—INFERENCES.

   Testimony by doctor that he treated insured for infected cyst of his ear and during the visit diagnosed the possibility of a duodenal ulcer and prescribed medicine, but that he was not sure whether he told insured of the diagnosis, might lead to an inference that insured had knowledge that he had a stomach or duodenal ulcer when he applied for the insurance, but this is not the only reasonable inference to be drawn.

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur, Trial § 1126.
[2] 29 Am Jur, Insurance § 262.
[3] 29 Am Jur 2d, Evidence § 221.
[4] 5 Am Jur 2d, Appeal and Error § 839 *et seq.*
[5] 29 Am Jur, Insurance § 368 *et seq.*
[6, 7] 29 Am Jur, Insurance § 698 *et seq.*
[8] 29 Am Jur, Insurance § 694.

4. Appeal and Error—Questions of Fact—Nonjury Case—Preponderance of Evidence.

> An appellate court does not substitute its judgment on factual questions in nonjury cases for that of the trial judge unless the facts clearly preponderate in the opposite direction.

5. Insurance — Misrepresentations Affecting Assumption of Risk.

> An insurance policy may be cancelled for a false statement in application for reinstatement of disability insurance policy, if the false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer (CLS 1961, § 500.2218).

6. Same—Misrepresentations—Knowledge of Applicant.

> Truth of a representation, in insurance law, refers to a truth synonymous with sincerity and lack of fraud, and the truth or falsity of a representation on application for reinstatement of an insurance policy should be examined in the light of what the applicant knew or had reason to know at the time of his application.

7. Same—Representations—Omissions—Evidence.

> Trial court's finding that defendant insured's failure to mention emotional troubles and frequent headaches and nausea, for which he had been treated by 2 doctors, in answering question whether he had had any illness in last 5 years on application for reinstatement of insurance policies, was not a misrepresentation justifying rescission in action by insurance company *held,* supported by the evidence, where defendant in answering the questions on the form listed data about a hemorrhoidectomy but did not answer "yes" to question whether he had had any illness, and his physician testified that he had prescribed medicine for a duodenal ulcer but did not know whether he had told defendant of his diagnosis of duodenal ulcer.

8. Same—Material Facts—Acceptance of Risk.

> An applicant for reinstatement of an insurance policy is not specially equipped to determine what facts are material to acceptance of a risk, and although he may be expected to answer in good faith the questions put to him, he is not expected to bring an understanding of medicine beyond that of the medical profession to the problem of materiality.

Appeal from Saginaw; O'Neill (James E.), J. Submitted Division 3 April 5, 1967, at Grand Rapids. (Docket No. 2,629.)   Decided March 20, 1968.

Complaint by Mutual Benefit Life Insurance Company, a New Jersey corporation, against Frank P. Abbott to rescind 3 disability insurance policies on the basis of alleged misrepresentations by defendant. Defendant's motion to dismiss granted at close of plaintiff's proofs.   Plaintiff appeals.   Affirmed.

*Wolf, Walker & Stenglein,* for plaintiff.

*Martin & Martin,* for defendant.

R. M. Ryan, J.   Plaintiff brought suit against defendant, its insured, to rescind three separate disability insurance policies on the basis of alleged material misstatements of fact regarding defendant's prior medical history at the time of filling out application forms for the policies and again on defendant's application for reinstatement of the policies after he had defaulted on payment of premiums.   The case was tried before the court without a jury, and at the conclusion of plaintiff's proofs, defendant's motion to dismiss was granted.   Plaintiff appeals.

In July, 1956, plaintiff had in effect two life insurance policies on the life of defendant and at that time issued supplementary disability policies.   Later in the same month, plaintiff issued another life policy on defendant's life with a supplemental disability policy.   Thereafter defendant defaulted in the payment of premiums due on all of these policies.   With reference to the three life insurance policies, plaintiff has taken the position that by reason of their terms these policies are incontestable, and accord-

ingly only the validity of the disability policies is being challenged.

In Part II of the applications for insurance filled out in 1956, defendant answered questions relating to his health as follows:

"29. Have you ever had:  *  *  *

"C. Ulcer of stomach or duodenum, appendicitis, jaundice, indigestion, disorder of gall bladder or rectal disease? No.  *  *  *

"E. Frequent headaches, paralysis, dizziness, loss of consciousness, epilepsy, nervous breakdown, mental disorder? No."

On June 30, 1958, defendant signed an application for reinstatement of the latest of the life policies issued by plaintiff and its supplementary disability policy. This application for reinstatement under Item 3 is as follows:

"3. A. Have you reason to believe that you are or may be mentally or physically impaired in any way? No.

"B. Have you during the last five years had any illness? No.

"C. Have you during the last five years received the services of a physician or an institution for electrocardiographic or X-ray studies, treatment, observation, diagnosis or a routine examination? Yes.

"(*If answer is 'yes' to any of the above questions, give reason, date, duration and names of all hospitals and attending physicians.*)

"April, 1957. Hemorrhoidectomy. Robert Kolesar, M.D. 10 days in hospital, Saginaw General."

On March 25, 1960, defendant signed an application for reinstatement of the other two life insurance policies with their accompanying disability policies and he answered the above questions in substantially the same manner.

All the policies mentioned above were reinstated following the filing of these applications.

On March 12, 1963, defendant applied for disability benefits, and in his application he presented the following information:

"4. A. Date of accident or of commencement of sickness.

| (Month) | (Date) | (Year) |
|---------|--------|--------|
| March   | 11     | 1957   |

"B. Nature of injury or sickness.

Ulcers and hemorrhoids and subsequent emotional problems.

"C. When, because of accident or sickness, did insured stop work?

| (Month) | (Date) | (Year) |
|----------|--------|--------|
| December | 31     | 1958"  |

In its complaint, plaintiff alleges that in filling out the original applications for insurance in 1956 and in the application for reinstatement of the policies filled out in 1958, defendant made a material misstatement of fact regarding his prior medical history in that he failed to disclose that he had been treated for ulcers by a physician in 1956 and thereafter, and that he suffered from frequent and severe headaches, nausea, and emotional disturbance beginning in March of 1956.

With reference to the applications for insurance filled out by defendant in 1956, plaintiff contends that there was sufficient proof to sustain its claim of material misstatement of fact, that the trial court should have made a reasonable inference from proven facts which were that defendant related to Doctor Kolesar subjective symptoms and complaints in March of 1956 which the doctor interpreted as being possibly caused by an ulcer, and that although the doctor did not inform defendant of his diagnosis, the symptoms should have reasonably put the defendant

on notice of his condition. Plaintiff asserts that in deciding defendant's motion to dismiss the trial court was bound to consider the evidence in the light most favorable to plaintiff. The case of *Attwood Brass Works* v. *Aero-Motive Manufacturing Company* (1957), 347 Mich 693, cited in support of plaintiff's proposition, was decided before the General Court Rules of 1963 had come into effect, and it is not dispositive of the matter before us. GCR 1963, 504.2 and the committee notes thereto (2 Honigman & Hawkins, Michigan Court Rules Annotated [2d ed], pp 329–30) indicate that when a case is tried by the court without a jury, the court may weigh and determine the *facts* as well as consider the sufficiency of the evidence as a matter of law. That is to say, when deciding the motion to dismiss, the court disposes of the case *on the merits,* and it is not bound to view the evidence in the light most favorable to the party attacked. Justice DETHMERS spoke of the reason for this rule in his dissenting opinion in *David* v. *Serges* (1964), 373 Mich 442. There is no sensible reason, said he (p 447),

"for splitting the judge into 2 entities, one as determiner of the facts and the other of the law, and then applying different rules, on review, as to the manner in which the evidence is to be viewed, depending on whether his honor is thought to have made his decision in his former or his latter role."

It should be borne in mind that questions and answers in an application for insurance are to be construed liberally in favor of the insured. *Mc-Kinney* v. *Liberty Life Insurance Company of Illinois* (1933), 263 Mich 490. At the trial, defendant's family doctor testified that he saw defendant on March 12, 1956, for an infected cyst of his right ear. During that visit, defendant complained of gastrointestinal symptoms which the doctor diagnosed as

possibly being produced by a duodenal ulcer, and he prescribed medicine. This was the only evidence relating to treatment for an ulcer which was introduced at the trial. There was no positive evidence that defendant was informed that the medicine was prescribed for an ulcer. The doctor testified that he could not say with certainty whether he had communicated his diagnosis to defendant. When defendant was hospitalized in 1957 for a hemorrhoidectomy, X rays confirmed the earlier diagnosis of an ulcer, and the doctor communicated the X-ray diagnosis to defendant. But there was no evidence whatever that defendant was treated for an ulcer at any time except as mentioned above.

Although there possibly might be an inference from the proven facts that defendant had knowledge of a stomach or duodenal ulcer when he applied for the insurance in July, 1956, we are not prepared to hold as a matter of law that it is the only reasonable inference. It is not normally the role of this Court to substitute its judgment on fact for that of the trier of fact (see *Bradshaw* v. *Blaine* [1965] 1 Mich App 50), and we decline to do in this instance.

Plaintiff further contends on this appeal that at the time defendant made application for reinstatement of the policies, defendant was under duty to disclose that he did have an ulcer and emotional disturbance prior to making out the applications, that defendant's omission of these facts then known to him makes his statements in the application false, and that plaintiff relied on the information contained in the application mentioned in reinstating the policies which would not have been reinstated if the company had been apprised of defendant's ulcer and emotional disturbance. Plaintiff contends that, even though the false statements or omissions were made without intent to deceive the insurance company, the latter would nevertheless have the right to refuse

reinstatement. Our attention in this regard is directed to *Manufacturers Life Insurance Company* v. *Beardsley* (1961), 365 Mich 308. At the time the policy was issued in *Beardsley,* the former statute, CL 1948, § 522.17 (Stat Ann 1943 Rev § 24.280), was in effect. Prior to its repeal by PA 1956, No 218, effective January 1, 1957, that section provided:

"The falsity of any statement in the application for any policy covered by this chapter shall not bar the right to recovery thereunder unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer."

The Court pointed out in *Beardsley* that the chancellor did not find intentional misrepresentation by the insured, but instead planted his decree upon the material effect the false statement had upon the insurer's acceptance of the risk. The Court recognized the holding in *Prudential Insurance Company of America* v. *Ashe* (1934), 266 Mich 667, that an insurance policy may be cancelled for an untrue statement made in good faith or even in ignorance of its falsity, if such misrepresentation materially affected the assumption of risk by the insurer. However, our Court in *Lipsky* v. *Washington National Insurance Company* (1967), 7 Mich App 632, had occasion to consider this argument and pointed out that Michigan precedents can be found both for and against it. See, also, *Ranger, Inc.* v. *Equitable Life Assurance Society of United States* (CA 6, 1952), 196 F2d 968.

At the time the policies were reinstated in the instant case, the new insurance code, CLS 1961, § 500.2218 (Stat Ann 1965 Cum Supp § 24.12218), was in effect. Under this section, it is provided that the falsity of any statement in the application for any disability insurance policy covered by the applicable chapter of the insurance code may not

bar the right to recovery thereunder unless such false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer. As pointed out in *Lipsky, supra,* this statute offers little help on the question raised by appellant as its emphasis is upon the materiality of any representation.

The main question, however, in the instant case is whether defendant really made false answers to the questions contained in the application for reinstatement of insurance and whether he was under duty to disclose that he had received treatments for ulcers and emotional problems beginning in March 1956.

In *Franklin Life Insurance Company* v. *William J. Champion & Company* (CA 6, 1965), 350 F2d 115, 123 certiorari denied (1966), 384 US 928 (86 S Ct 1445, 16 L ed 2d 531), Judge McAllister observed that, in insurance law, the truth of a representation refers to a truth synonymous with sincerity and lack of fraud, rather than to the literal meaning of truth, which is relating things exactly as they are. The truth or falsity of a representation on an insurance policy should be examined in the light of what the applicant knew or had reason to know at the time of his application.

When we look at the questions and answers set forth in the application for reinstatement, we do not believe the trial court was in error in finding that there was no material misrepresentation of fact entitling plaintiff to rescind the policies. While it is true that in answer to the question: "Have you during the last five years had any illness?" the defendant answered "No", he could have honestly believed that to be the fact. What is meant by "illness" to one individual may have an entirely different meaning to another individual. We believe the evidence supports the conclusion that Mr. Abbott did not

believe he had any "illness" prior to filling out the application for reinstatement. In answer to the question as to whether during the past five years he had received the services of a physician for "treatment, observation, diagnosis or a routine examination", Mr. Abbott answered "Yes" and gave the reason, date, duration and name of the hospital and attending physician as instructed by stating: "April, 1957. Hemorrhoidectomy. Robert Kolesar, M.D., 10 days in hospital, Saginaw General."

Plaintiff contends that defendant omitted to state that he had sustained emotional problems, had frequent headaches and nausea and had received treatments from two doctors to relieve him of these difficulties. The record does not show what kind of treatments were given, and it is possible that only some form of medicine was prescribed or psychiatric treatment given. It is also possible that the emotional condition was temporary and not serious in nature. There is no record of any hospitalization because of the complaints mentioned. As these questions and answers ought to be construed liberally in favor of the insured, we cannot say that defendant's omission to disclose the facts about his emotional problems and his headaches and nausea constitutes a material misstatement of fact in answer to the questions referred to. Certainly there is nothing in the record to indicate that Mr. Abbott believed that the conditions mentioned were symptoms of any serious ailments. That defendant attempted to answer the questions honestly and to the best of his ability is borne out by the fact that in answer to the specific question regarding treatments by a physician, he truthfully answered that he had been hospitalized, named the doctor who treated him and gave the reason for his hospitalization. It would have been a simple matter for the insurer to ask specific questions relating to the insured's physical

condition as it existed prior to the application for reinstatement to elicit the information desired. This it did not do. Neither did the insurance company investigate the medical history of the ailment reported.

As pointed out by the Court in *Franklin Life Insurance Company* v. *William J. Champion & Company, supra,* p 129, it must be remembered:

" 'The insured is not specially equipped to determine what facts are material to the acceptance of a risk. He may be expected to answer in good faith the questions that are put to him, but not to bring an understanding of medicine beyond that of the medical profession to the problem of materiality.' "

The burden of proof was upon plaintiff to prove the material misstatements alleged in its complaint. The facts and the inferences to be drawn from the evidence introduced by plaintiff were for the trial court to determine. It is our conclusion that the trial court's findings on defendant's motion to dismiss were supported by the evidence, and in accordance with the foregoing, we hold that the trial court properly dismissed the complaint.

Affirmed. Costs to appellee.

BURNS, P. J., and HOLBROOK, J., concurred.