**PROVIDENT LIFE & ACCIDENT IN-SURANCE COMPANY, a foreign corporation, Plaintiff,**

v.

**James A. ADIE, Defendant.**

No. 95–40183.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 29, 1997.

Stephen L. Witenoff, Thomas, DeGrood, Southfield, MI, for Plaintiff.

James E. DeLine, Kerr, Russell, Detroit, MI, for Defendant.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTIONS IN LIMINE

GADOLA, District Judge.

This action involves a dispute as to whether Dr. James A. Adie ("Dr.Adie") is entitled to benefits under a disability income policy ("Policy") issued by Provident Life and Accident Insurance Company ("Provident"). Dr. Adie has submitted the following four motions *in limine:*

1. Motion *in limine* to preclude Provident from raising two additional policy defenses not asserted by Provident when it initially denied Dr. Adie coverage under the Policy.

2. Motion *in limine* to exclude from trial any evidence that Dr. Adie is not "totally disabled" within the meaning of the Policy.

3. Motion *in limine* to exclude any evidence regarding whether Dr. Adie was required to bring errors and/or discrepancies in his application to Provident's attention.

4. Motion *in limine* to exclude any evidence of Dr. Adie's income and employment after the date he signed his application for insurance.

1. Allegedly, Weston read the questions on the Application to Dr. Adie and recorded Dr. Adie's

## FACTUAL BACKGROUND

On April 29, 1993, Dr. Adie signed an offer to purchase the dental practice of Robert R. Olson, D.D.S., in Southfield, Michigan. Prior to entering the contract to purchase Dr. Olson's practice, Dr. Adie received a Practice Summary. This summary contained a wealth of information, including a schedule of Dr. Olson's wages and operating expenses for 1989–1991 and an "Income and Expense Projection," wherein it was estimated that Dr. Adie's adjusted gross income after expenses in his first year of ownership would be $87,-658.

On May 12, 1993, Dr. Adie contacted an independent insurance agent, Dale Weston, to purchase insurance for his new practice. Consequently, Dr. Adie signed an application for disability insurance ("Application") with Provident. Part I, section 3(a) of the Application required Dr. Adie to provide Provident with his "Annual Earned Income From [His] Occupation for Federal Tax Purposes (After Business Expenses, if any)." More specifically, Part I, section 3(a) directed Dr. Adie to provide his *"Current Annual Rate of Earned Income"* and his annual earned income for the *"Actual Prior Calendar Year"* and the *"Actual Year Prior to the Last Calendar Year."* Dr. Adie stated that his "Current Annual Rate of Earned Income" was $80,000, his annual earned income for the "Actual Prior Calendar Year" (1992) was $60,000, and his annual earned income for the "Actual Year Prior to the Last Calendar Year" (1991) was $45,000.[1]

Upon signing the Application, Dr. Adie certified that:

To the best of [his] knowledge and belief, all of the foregoing statements [made in Part I] and all of those in Part II, if any, of this Application [were] true, complete, and correctly stated. They [were] offered to Provident Life and Accident Insurance Company as the basis for any insurance issued or th[e] Application.

verbal answers.

Approximately two weeks after the meeting with Weston, Dr. Adie was contacted via phone by a provident employee in Chattanooga, Tennessee to verify the answers he previously provided on his Application. Once again, Dr. Adie proclaimed that his "Current Annual Rate of Earned Income" was projected at $80,000 and that he had earnings of $60,000 and $45,000 for the prior two years, respectively.

Provident ultimately issued disability policy number 06–337–B–4098261 to Dr. Adie. The Policy became effective June 1, 1993. On June 2, 1993, the day after the Policy's effective date, Dr. Adie began working at the newly acquired dental practice he purchased from Dr. Olson. Shortly thereafter, Dr. Olson demanded rescission of the purchase agreement. Two months after taking over the practice, on August 19, 1993, Dr. Adie entered into a settlement agreement with Dr. Olson that rescinded the prior purchase agreement. On August 30, 1993, Dr. Adie became employed at a dental office in Sterling Heights, Michigan, earning approximately $1,000 a week.

In June, 1994,[2] Dr. Adie, who is right-handed, allegedly injured two fingers on his right hand while using a hand saw. He filed a Notice of Claim with Provident. Since the Notice of Claim was filed within the two year contestable period of the Policy, Provident initiated a routine claim investigation.[3] The investigation revealed a discrepancy between the income representations Dr. Adie made in Part I, section 3(a) of the Application and the income Dr. Adie actually earned. Dr. Adie's tax returns disclosed that actual earned income for 1993, 1992 and 1991 was $28,639[4] $46,956 and $27,886, respectively. Dr. Adie had represented on his application that his projected income for 1993 was $80,000 and his actual 1992 and 1991 income was $60,000 and $45,000, respectively. Provident then denied Dr. Adie disability benefits claiming

that Dr. Adie made material misrepresentations regarding his income. In a letter sent to Dr. Adie dated October 5, 1994, Provident stated, "[t]he Underwriter indicated that Provident relied on the information revealed on the application and the undisclosed information was material to the acceptance of the risk and policy [sic] would not have been issued as applied for if accurate [income] history had been revealed."

## PROCEDURAL HISTORY

On or about May 31, 1995, Provident filed the instant action for a declaratory judgment that the Policy issued to Dr. Adie is null and void and that Provident has no obligation under it whatsoever. On July 13, 1995, Dr. Adie filed his answer and a counter-claim. Dr. Adie's counter-claim alleges that Provident wrongfully denied him benefits and seeks damages for this wrongful denial.

On June 24, 1996, Provident filed a motion for summary judgment, arguing that there is no genuine issue of material fact that Dr. Adie made material misrepresentations regarding his past and future income on his application for the Policy, and that Provident therefore correctly denied Dr. Adie benefits. Dr. Adie, on June 24, 1996, filed a cross-motion for summary judgment contending that there is no genuine issue of material fact that he did not make any material misrepresentations on his insurance application and is thus entitled to coverage under the Policy.

This court, in a memorandum opinion and order dated November 1, 1996, denied both parties' motions for summary judgment. This court found:

1. Dr. Adie's 1991 and 1992 income representations to Provident were misrepresentations, but there was a genuine issue of material fact as to whether they were *material* misrepresentations; the misrepresentations were material if Provident

---

2. Dr. Adie allegedly stopped practicing dentistry two months prior to his accident, in March, 1994.

3. The Policy provides that "After two years from the Effective Date of this policy, no misstatements, except fraudulent misstatements, made by you in the application for this policy will be used to void the policy or deny a claim for loss in-

curred or disability that starts after the end of such two year period."

4. Dr. Adie's 1993 income was not discovered at the outset of the investigation because Dr. Adie had not yet filed his 1993 returns until sometime after October, 1994.

would not have issued the same exact policy had Dr. Adie not made the misrepresentations.

2. There was a genuine issue of material fact as to whether Dr. Adie's 1993 income projection was a *misrepresentation*. Assuming that his 1993 income projection was a misrepresentation, it was most certainly a material misrepresentation.

3. Provident relied on Dr. Adie's statements regarding all three income representations.

This court held that the issues which remained to be litigated at trial are:

1. Whether Dr. Adie's misrepresentations of his 1991 and 1992 income were *material*.

2. Whether Dr. Adie *misrepresented* his 1993 income.

Currently before this court are four motions *in limine* filed by Dr. Adie. Each motion will be discussed *seriatim*.

### ANALYSIS

*Motion In Limine One*—Dr. Adie's motion to preclude Provident from raising two additional Policy defenses not asserted by Provident when it initially denied him coverage.

Dr. Adie's first motion *in limine* seeks to preclude Provident from raising what it considers to be two different defenses at trial, to wit: (1) Dr. Adie is not "totally disabled" because he can perform the substantial and material duties of a *dentist* or because he has not made a reasonable attempt to determine whether or not he can return to practicing dentistry (hereinafter the "total disability defense"), and (2) Dr. Adie is not disabled because he can perform the substantial and material duties of an *unemployed person* (hereinafter the "occupation defense"). Dr. Adie claims that Provident is estopped from asserting the total disability and occupation

defenses because it waived them by not mentioning them in the letter denying him benefits. That letter, dated October 6, 1994, reads as follows:

Under the circumstances, Provident has no alternative but to deny your claim and to rescind, cancel, and declare null and void policy 06–337–4098261 *based on misstatements presented.*

■■■ In Michigan, there is a general rule that denial of liability under an insurance policy on specified grounds constitutes a waiver of other defenses. *See, e.g., J.C. Wyckoff & Assoc. v. Standard Fire Ins. Co.,* 936 F.2d 1474, 1489 (6th Cir.1991); *Brackx v. Minnesota Mut. Life Ins. Co.,* 954 F.Supp. 1189, 1192 (E.D.Mich.1997); *Jones v. Jackson Nat'l. Life Ins. Co.,* 819 F.Supp. 1372, 1377 (W.D.Mich.1993); *Martinek v. Firemen's Ins. Co.,* 247 Mich. 188, 191, 225 N.W. 527 (1929); *Smith v. Grange Mut. Fire Ins. Co. Of Mich.,* 234 Mich. 119, 122–123, 208 N.W. 145 (1926). As the court in *Smith* explained:

[I]t must be accepted as the settled law of this State [Michigan], that when a loss under an insurance policy has occurred and payment refused for reasons stated, good faith requires that the company shall fully apprise the insured of all of the defenses it intends to rely upon, and its failure to do so is, in legal effect, a waiver, and estops it from maintaining any defenses to an action on the policy other than those of which it has thus given notice.

234 Mich. at 122–123, 208 N.W. 145. The rule of waiver, however, is not absolute. An insurer which denies liability for a specific reason relinquishes its right to assert defenses of which it had knowledge at the time it denied liability; it is not estopped from asserting defenses **of which it had no knowledge** at the time benefits were denied. *Jones v, Jackson Nat. Life Ins. Co.,* 819 F.Supp. 1372, 1378 (W.D.Mich.1993).[5] *See*

---

**5.** Provident makes a host of arguments as to why the general rule of waiver is inapplicable here and why it should be allowed to raise other defenses (aside from the income misrepresentation defense) at trial. None of Provident's alternative arguments are persuasive. For instance, Provident contends that the general rule of waiv-

er is inapplicable in this case because its denial of coverage letter reserved "all rights and defenses in this matter." However, Provident cites no authority whatsoever for this proposition. Also, Provident maintains that there is an exception to the general rule of waiver where the insurer determines the policy is null and void at the

*also* Couch on Insurance 2d (Rev.Ed) (1985) § 35:249 (stating that in order for there to be a "waiver," there must be an existing right, a *knowledge* of its existence, and an actual intention to relinquish it).

■■■ With this in mind, whether Provident should be barred at trial from raising the total disability and occupation defenses depends on whether Provident had knowledge of these defenses at the time it denied Dr. Adie benefits. At this time, there is a factual question as to whether Provident had knowledge of these two defenses at the time it denied Dr. Adie benefits. Dr. Adie's motion *in limine* is not the appropriate vehicle for resolving such a factual question. Motions *in limine* typically involve matters which ought to be excluded from the jury's consideration due to some possibility of prejudice or as a result of previous rulings by the court. Surely, it cannot be disputed that it would be inappropriate to grant Dr. Adie's motion to exclude Provident from raising these two defenses at trial *solely* upon Dr. Adie's naked assertions in his brief that Provident must have known of these two defenses since it had Dr. Adie's medical records at the time it denied him benefits. (*See* Defendant's Reply to Plaintiff's Response to Defendant's Motion *In Limine* to Preclude Plaintiff from Raising Additional Policy Defenses, pp. 3–4). If Dr. Adie wanted to preclude Provident from raising these defenses at trial because there was no genuine issue of material fact as to them, then he should not have filed a motion *in limine* on the eve of trial, but should instead have filed a summary judgment motion pursuant to Federal Rule of Civil Procedure 56.

■■■ Actually, this court does not consider the "total disability defense" (i.e., that Dr. Adie is not "totally disabled" because he can perform the substantial and material duties of a *dentist* or because he has not made a reasonable attempt to determine whether or not he can return to practicing dentistry), and "occupation defense" (i.e., that Dr. Adie is not totally disabled because he can perform the substantial and material duties of an *unemployed person* to be two separate and distinct defenses.) Rather these defenses are in reality, only one defense, to wit: that Dr. Adie is not totally disabled *within the meaning of the Policy* because he can perform the substantial and material duties of his occupation.[6] This defense (i.e., that Dr. Adie is not totally disabled within the meaning of the Policy) was raised in Provident's Answer to Dr. Adie's counter-complaint filed on July 27, 1995. Because Provident raised this defense in its Answer to Dr. Adie's counter-complaint, this court finds that Dr. Adie had sufficient notice of this defense from the very early stages of this lawsuit which would have enabled him to file a summary judgment motion on this defense.

In sum, Dr. Adie's motion *in limine* with respect to the total disability and occupation defenses will be denied.

*Motion In Limine Two*—Dr. Adie's motion *in limine* to exclude from trial any evidence not previously provided by Provident in support of its defense that Dr. Adie is not "totally disabled" within the meaning of the disability insurance policy.

■■■ As aforementioned, one of Provident's defenses is that Dr. Adie is not "totally disabled," as that term is used in the Policy, because he can perform the substantial and material duties of his "occupation." Dr. Adie contends that, to date, Provident has failed to provide any information other than referring to Dr. Adie's own medical records[7] to sup-

---

outset. This is also unavailing. Michigan law makes no such distinction. *See Jones v. Jackson Nat'l. Life Ins. Co.,* 819 F.Supp. 1372 (W.D.Mich. 1993) (insurer denied liability to insured on grounds that policy was void from the onset due to an unreported change in the applicant's health between the time of application and delivery of the policy; although the defense was subsequently withdrawn at trial, the court found that the assertion of this defense served as a waiver of all other defenses that the insurer had knowledge of but did not raise at the time coverage was denied). And, such a distinction would "swallow"

the rule. An insurer could always assert the defense that the policy is null and void and be excused from the general rule.

6. The Policy defines "totally disabled" as "injuries or sickness" which make the policy-holder unable "to perform the substantial and material duties of [his or her] occupation."

7. During discovery, Dr. Adie served Provident with discovery requests seeking information regarding Provident's claim that Dr. Adie is not

port such a claim. Provident has also allegedly failed to identify witnesses who will testify as to this issue. In his second motion *in limine*, Dr. Adie seeks to preclude Provident from introducing any witness or information at trial which have not previously been disclosed.

Federal Rules of Civil Procedure 26(e)(1) and 37(c)(1) govern this issue. Rule 26(e)(1) imposes a duty upon a party to supplement at appropriate intervals, its disclosures, when a party learns that a response to an interrogatory is in some material respect incomplete or incorrect and if additional or correct information has not otherwise been made known to other parties during the discovery process or in writing. Rule 37(c)(1) prohibits a party, who without substantial justification failed to disclose information required by Rule 26(e)(1), from introducing at trial any evidence not previously disclosed, unless failure of that party to disclose the evidence is harmless.

Under a straightforward application of Rules 26(e)(1) and Rule 37(a)(1), Provident should be precluded from introducing into evidence any previously non-disclosed evidence pertaining to the "total disability" issue. Accordingly, this court will bar Provident at trial from introducing any information or calling any witnesses not previously disclosed by Provident to Dr. Adie.

***Motion In Limine Three***—Dr. Adie's motion *in limine* to exclude Provident from introducing any evidence regarding whether Dr. Adie was required to bring errors and/or discrepancies in his application to Provident's attention.

One of the pivotal issues to be litigated at trial is whether Dr. Adie misrepresented his 1993 income on his insurance application. On the issue of whether Dr. Adie misrepresented his 1993 income on his insurance application, Dr. Adie contends that Provident should not be allowed to introduce evidence that Dr. Adie failed to bring to the attention of Provident any errors in his 1993 income projection when those errors became known to Dr. Adie. Dr. Adie maintains that he was under no duty to update his application, and thus evidence of his failure to notify Provident of errors and/or discrepancies in his insurance application *after* he completed his insurance application is irrelevant and should be excluded at trial. He claims that his failure to bring errors and/or discrepancies in his application to the attention of Provident has nothing whatsoever to do with whether he misrepresented his income and furthermore shows absolutely no bad faith on his part.

It should be noted that this court previously held at page 14 of the November 1, 1996 opinion and order denying Provident's and Dr. Adie's cross-motions for summary judgment, that an insurer was under no general duty to investigate the truthfulness of an applicant's responses.[8] This is a different question than whether an applicant has an affirmative duty to voluntarily update information and point out errors and/or discrepancies in the application.[9]

This court finds that evidence of whether Dr. Adie failed to bring known errors in his insurance application to the attention of Provident ***after he completed the***

"totally disabled." Provident responded with the following response:

> At the present time, Provident's position is based on the determination that defendant's injuries are too minimal to be disabling. Defendant is referred to his own medical records. Expert witnesses will be identified during the course of the litigation.
> All affirmative defenses were raised because of the necessity to do so at the same time of Provident's answer to the counter-complaint. This interrogatory cannot fully be answered until discovery is complete.

**8.** Dr. Adie relies on *Mutual Benefit Life Ins. Co. v. Abbott*, 9 Mich.App. 547, 157 N.W.2d 806

(1968) for the proposition that an insurance applicant is under no duty to report errors in his application to the insurer and the burden of ensuring the accuracy of applications is on the insurer. Yet, *Mutual Benefit Life Ins. Co.* does not provide any support for this proposition. In that case, the court merely held "that questions and answers in an application for insurance are to be construed liberally in favor of the insured." *Id.* It did not hold that insurers have an affirmative duty to verify the information contained in the application.

**9.** Dr. Adie relies on *Vella v. Equitable Life Assurance So.*, 887 F.2d 388, 393 (2nd Cir.1989) for such a proposition.

*application but before the Policy was issued* is relevant. It is well-established that "a representation made in an application for insurance is a continuing affirmation of the truthfulness of such representations until the policy is delivered." Couch on Insurance 2d (Rev. Ed.) (1985) § 35:97. Thus, "[i]f there is a change in conditions between the making of the representation and issuance of the policy, the insured may be required to so notify the insurer." Couch on Insurance 2d (Rev. Ed.) (1985) § 35:97. "In consequence of the continuing character of the representation from the moment of its making to the time when the contract is binding, a duty rests upon the insured to reveal conflicting knowledge acquired by him between those two dates." Couch on Insurance 2d (Rev. Ed.) (1985) § 35:98. *See New York Life Ins. Co. v. Modzelewski,* 267 Mich. 293, 297, 255 N.W. 299 (1934) (plaintiff insurer asserted that an insured is obligated to report changes in its representations on the application that occurred before delivery of the policy; court found this legal aspect inapplicable to that case but conceded its correctness).

■ Moreover, Dr. Adie's failure to bring to the attention of the insurance company errors and omissions in his insurance application *after* it was completed is admissible evidence tending to establish Dr. Adie's lack of good faith in applying for insurance. Since Dr. Adie had a duty to update his insurance application before it was issued, the fact that he did not makes it more likely that he made a misrepresentation as to that income projection.

■ It is clear that Dr. Adie had a duty to update his insurance application prior to the issuance of the Policy, yet Provident argues that this duty continued beyond the date the Policy was issued. Provident has cited no persuasive authority for this proposition and this court has been unable to locate any such authority. Provident has cited *Serbinoff v. Wolverine Mut. Motor Ins. Co.,* 242 Mich. 394, 400, 218 N.W. 776 (1928) and *Parmet*

*Homes v. Republic Ins. Co.,* 111 Mich.App. 140, 145, 314 N.W.2d 453 (1981), for the proposition that an insured has an on-going duty to update his application, but these cases do not support the proposition that the duty extends beyond the date a policy is issued. These cases merely hold that an insured is responsible for knowing the conditions of the policy and raising questions as to coverage provided.

In short, this court will allow Provident to introduce evidence that Dr. Adie failed to bring to its attention errors and/or discrepancies in his application *prior* to the date the Policy was issued, but not thereafter.

*Motion In Limine Four*—Dr. Adie's motion *in limine* to exclude any evidence of Dr. Adie's income and employment after the date he signed his application for insurance.

■ The fourth motion *in limine* filed by Dr. Adie seeks to exclude Provident from introducing any evidence of Dr. Adie's post application employment history any income. Dr. Adie contends that such information is irrelevant. Dr. Adie further contends that assuming the information *is* relevant, it is more prejudicial than probative.[10]

One of the seminal issues to be litigated is whether Dr. Adie made a misrepresentation on his application for insurance in May, 1993 when he estimated his "Current Annual Rate of Earned Income" to be $80,000.00. Dr. Adie vigorously argues that in order to determine if he made a misrepresentation when he *estimated* his "Current Annual Rate of Income," the trier of fact need not know his *actual* 1993 income. Dr. Adie maintains that all the trier of fact need look at are the facts and circumstances that existed at the time he estimated his "Current Annual Rate of Earned Income." In other words, Dr. Adie contends that what he actually earned in 1993 does not matter. What is relevant is what he, in May, 1993, believed his "Current Annual Rate of Income" to be at the time he completed his insurance application. Alleg-

---

**10.** Dr. Adie is worried as to the possible prejudicial effect of introducing evidence of his post-application income and employment history. At the time Dr. Adie signed the application, he had just purchased a dental practice and the income information in his application purportedly was based in part on his rate of income from the new dental practice. Two months *after* Provident issued a Policy, the seller rescinded the sale of the practice and his income fell sharply.

edly, Dr. Adie believed his "Current Annual Rate of Earned Income" to be the monthly amount of income he would earn after purchasing Dr. Olson's dental practice multiplied by twelve.

Provident contends that the total amount of earned income by Dr. Adie for 1993 should not be excluded because it is relevant to show the following: (1) that Dr. Adie did not earn the amount he estimated his current annual date of earned income to be and therefore that Provident did not act wrongfully or in bad faith in denying his claim, and (2) that the amount of earned income between May 1993 and August 1993, the time before the purchase agreement with Dr. Olson was rescinded, was not in line with his projection that he would earn $80,000 for the current annual year, thus tending to show that he overestimated his "Current Annual Rate of Earned Income."

This court is persuaded by Provident's argument that evidence of Dr. Adie's 1993 income is relevant, not substantially more prejudicial than probative, and therefore admissible under Federal Rules of Evidence 401[11] and 403.[12] First, evidence of Dr. Adie's actual 1993 income is relevant for several reasons. That figure provides an important piece of background information to the jury as to why Provident denied Dr. Adie benefits on the ground that he misrepresented his income. That figure also tends "to make the existence of a[ ] fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," that fact being whether Dr. Adie misrepresented his income. What Dr. Adie actually earned in 1993, and particularly during the months of June and July, 1993 when he was working at Dr. Olson's practice, should assist the jury in deciding whether Dr. Adie had a legitimate expectation of earning $80,000 for the year 1993, and whether he in good-faith estimated

his income to be $80,000. The gross disparity between Dr. Adie's actual income and projected income tend to make it more likely that Dr. Adie did *not* have a legitimate expectation of earning $80,000 and did not in good-faith estimate his "Current Annual Rate of Earned Income" to be $80,000, especially when this evidence is coupled with other evidence (i.e., that prior to the time he made his $80,000 projection Dr. Adie was provided with figures from Dr. Olson showing that Dr. Olson, himself, never earned wages of $80,000).[13]

Furthermore, this court does not find evidence of Dr. Adie's actual 1993 income substantially more prejudicial than probative. Dr. Adie is concerned about the prejudicial effects of introducing his 1993 income. He foresees the jury being misled into concluding that Dr. Adie misrepresented his 1993 income solely from the fact that his actual 1993 income deviated from his projected 1993 income. This court does not envision this occurring. Indeed, to overcome the possibility of such prejudice, a limiting instruction can be given to the jury.

In sum, this court will allow evidence of Dr. Adie's 1993 income to be introduced.

### ORDER

**IT IS HEREBY ORDERED** that DR. ADIE's motion *in limine* to preclude PROVIDENT LIFE & ACCIDENT INSURANCE COMPANY from raising additional Policy defenses is DENIED.

**IT IS FURTHER ORDERED** that DR. ADIE's motion *in limine* to exclude any evidence that he is not "totally disabled" within the meaning of the Policy is GRANTED.

**IT IS FURTHER ORDERED** than DR. ADIE's motion *in limine* to exclude evidence regarding whether he was required to bring

---

**11.** Federal Rule of Evidence 401 provides as follows:

'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

**12.** Federal Rule of Evidence 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay waste of time, or needless presentation of cumulative evidence.

**13.** Dr. Olson's wages for 1989, 1990 and 1991, which were $69,900, $54,000 and $74,077.

errors and/or discrepancies in his Policy and application to PROVIDENT LIFE & ACCIDENT INSURANCE COMPANY's attention will be GRANTED IN PART and DENIED IN PART. PROVIDENT LIFE & ACCIDENT INSURANCE COMPANY will be allowed to introduce evidence of DR. ADIE's failure to bring errors and/or discrepancies in his Policy and application to PROVIDENT LIFE & ACCIDENT INSURANCE COMPANY's attention after the date he signed his application but prior to the date the Policy was issued. PROVIDENT LIFE & ACCIDENT INSURANCE COMPANY will be precluded from introducing evidence of DR. ADIE's failure to bring errors and/or discrepancies in his Policy and application to PROVIDENT LIFE & ACCIDENT INSURANCE COMPANY's attention after the date the Policy was issued.

**IT IS FURTHER ORDERED** that DR. ADIE's motion *in limine* to exclude evidence of DR. ADIE's actual 1993 income is DENIED.

**SO ORDERED.**