758 F.2d 147
 37 Fair Empl.Prac.Cas. 535,
36 Empl. Prac. Dec. P 35,085,
17 Fed. R. Evid. Serv. 978
Belen TORRES, Plaintiff-Appellant (83-1194),
Plaintiff-Appellee (83-1239, 83-1453),
v.
COUNTY OF OAKLAND and Oakland County Community Mental Health
Services Board, jointly and severally,
Defendants-Appellees (83-1194),
Defendants-Appellants
(83-1239, 83-1453).
 Nos. 83-1194, 83-1239 and 83-1453.
 United States Court of Appeals,
Sixth Circuit.
 Argued Nov. 29, 1984.
Decided March 19, 1985.
 
 Ali Chui Karega (argued), Glotta, Adelman, Dinges & Riley, Detroit, Mich., for Belen Torres.
 Malcolm D. Brown (argued), Steven J. Fishman, Bloomfield Hills, Mich., for County of Oakland, etc. in Nos. 83-1194 and 83-1453.
 Steven J. Fishman, Malcolm D. Brown (argued), William T. McLellan, Bloomfield Hills, Mich., for County of Oakland, etc. in No. 83-1239.
 Before KEITH and CONTIE, Circuit Judges and PHILLIPS, Senior Circuit Judge.
 CONTIE, Circuit Judge.
 
 
 1
 Belen Torres appeals a judgment entered upon a jury verdict in favor of the defendants, County of Oakland and Oakland Community Mental Health Services Board, in this employment discrimination action brought under Title VII and 42 U.S.C. Sec. 1981. Torres' complaint alleged discriminatory treatment based on her national origin. The defendants cross-appeal the district court's denial of attorney's fees. See 42 U.S.C. Sec. 1988.
 
 I.
 
 2
 Because Torres does not challenge the sufficiency of the evidence, the facts may be briefly stated. Torres is a Filipino by birth but has become a United States citizen. She has a Masters degree in social work and has worked for the defendants since September 1979 as a "casework supervisor."
 
 
 3
 At a meeting in February of 1980, Torres' supervisor, Norbert Birnbaum, used the term "ass" or "asshole" in reference to her. Torres offered some evidence to show that this was purely name-calling. The defendants offered evidence tending to show that, in context, the remark was that Torres would make an "ass" or "asshole" of herself if she continued to discuss subjects after the meeting's discussion had moved to other matters on the agenda.
 
 
 4
 Torres also offered evidence that her six-month evaluation was downgraded from "outstanding" to "average" in one category without consulting her. The defendants admitted that the evaluation was unilaterally downgraded, but presented evidence tending to show that the change was required by uniformly applied guidelines for attendance. The evaluation form itself reveals that in seven out of eight categories Torres did receive a rating of "outstanding"; only in the eighth category, for attendance, was she rated as "average."
 
 
 5
 In 1980, the Board decided to create a new supervisory position. Torres applied for this opening but was not promoted. The defendants did not dispute that Torres possessed the general qualifications for this position but instead presented evidence tending to show that there was a high degree of dissension in the ranks of their employees. Thus, it was advisable, in the defendants' view, to hire a new employee to fill the position rather than to promote someone from within the ranks.
 
 II.
 
 6
 Torres' first argument is that the trial court erred in admitting certain testimony of Dr. Quiroga into evidence. Dr. Quiroga is the defendants' Director of Children's Services and took part in selecting the person to fill the new supervisory position. During the examination of Dr. Quiroga by the defendants, the following exchange took place:
 
 
 7
 Q. It is true, Dr. Quiroga, that you did not believe that Ms. Torres had been discriminated against because of her national origin in that interview process?
 
 
 8
 MR. KAREGA: Objection, your Honor.
 
 
 9
 THE COURT: No, she may state her opinion on that.
 
 
 10
 A. That is correct.
 
 
 11
 Torres argues that Dr. Quiroga's opinion testimony was not proper under Federal Rule of Evidence 701 both because it was not sufficiently based on personal perception and because it was testimony containing a legal conclusion.[1]
 
 Federal Rule of Evidence 701 provides:
 
 12
 If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact and issue.
 
 
 13
 The essence of Torres' first argument is that Dr. Quiroga's testimony required her to know the intent or state of mind of Dr. Malueg, who ultimately made the decision not to promote Torres, and that an opinion on another's intent cannot be "rationally based on the perception of the witness."
 
 
 14
 The illogicality of this argument has been succinctly demonstrated by Wigmore:
 
 
 15
 The argument has been made that, because we cannot directly see, hear, or feel the state of another person's mind, therefore testimony to another person's state of mind is based on merely conjectural and therefore inadequate data. This argument is finical enough; and it proves too much, for if valid it would forbid the jury to find a verdict upon the supposed state of a person's mind. If they are required and allowed to find such a fact, it is not too much to hear such testimony from a witness who has observed the person exhibiting in his conduct the operations of his mind.
 
 
 16
 2 J. Wigmore, Wigmore on Evidence Sec. 661 (J. Chadbourn rev. 1979). Another commentator explains the requirement that a lay witness' opinion testimony must be "rationally based on the perception of the witness" as merely requiring that "the opinion or inference is one which a normal person would form on the basis of the observed facts." See 3 J. Weinstein & M. Berger, Weinstein's Evidence p 701, page 701-11 (1982). Accordingly, witnesses have been allowed to give opinions on whether another person subjectively believed that he would be shot by an aggressor, see John Hancock Mutual Life Insurance Co. v. Dutton, 585 F.2d 1289, 1293-94 (5th Cir.1978), and, in a civil rights action, that an arrest was "motivated by racial prejudice," see Bohannon v. Pegelow, 652 F.2d 729, 731-32 (7th Cir.1981). As the Fifth Circuit stated in Dutton:
 
 
 17
 When, as here, the witness observes first hand the altercation in question, her opinions on the feelings of the parties are based on her personal knowledge and rational perceptions and are helpful to the jury. The Rules require nothing more for admission of the testimony.
 
 
 18
 Dutton, 585 F.2d at 1294.
 
 
 19
 The record in this case clearly establishes that Dr. Quiroga was privy to the details of Dr. Malueg's selecting the new supervisor. The foundational requirement of personal knowledge of the outward events has thus been satisfied. Since we do not believe that it is beyond the ken of an ordinary person to infer from another's outward actions what his inward feelings are regarding a third person's national origin, Dr. Quiroga's testimony was rationally based on her perceptions.
 
 
 20
 Torres' second argument rests on the last clause in Rule 701, that the opinion must be "helpful" to the jury. She argues that because Dr. Quiroga's testimony was couched as a legal conclusion, it was not helpful to the jury. We agree.
 
 
 21
 At the outset, it should be noted what we do not decide. Since Federal Rule of Evidence 704 provides that "testimony ... otherwise admissible is not objectionable because it embraces the ultimate issue to be decided," Dr. Quiroga's testimony cannot be challenged as an improper conclusion on an ultimate fact. The Advisory Committee notes point out, however, that Rule 704 "does not lower the bars so as to admit all opinions." The effect of Rule 704 is merely to remove the proscription against opinions on "ultimate issues" and to shift the focus to whether the testimony is "otherwise admissible." See United States v. Baskes, 649 F.2d 471, 479 (7th Cir.1980), cert. denied, 450 U.S. 1000, 101 S.Ct. 1706, 68 L.Ed.2d 201 (1981) ("Rule 704, however, does not provide that witnesses' opinions as to the legal implications of conduct are admissible."). As the Advisory Committee note explains, certain opinions which embrace an ultimate issue will be objectionable on other grounds.
 
 
 22
 Under Rule 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day. They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria. Thus the question, "Did T have capacity to make a will?" would be excluded, while the question "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and formulate a rational scheme of distribution?" would be allowed.
 
 
 23
 The problem with testimony containing a legal conclusion is in conveying the witness' unexpressed, and perhaps erroneous, legal standards to the jury. This "invade[s] the province of the court to determine the applicable law and to instruct the jury as to that law." F.A.A. v. Landy, 705 F.2d 624, 632 (2d Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 243, 78 L.Ed.2d 232 (1983). See also Marx & Co. v. Diner's Club, Inc., 550 F.2d 505, 509-10 (2d Cir.), cert. denied, 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977) ("It is not for witnesses to instruct the jury as to applicable principles of law, but for the judge."); 3 J. Weinstein & M. Berger, supra, at p 704, page 704-11. Although trial judges are accorded a relatively wide degree of discretion in admitting or excluding testimony which arguably contains a legal conclusion, see Stoler v. Penn Central Transportation Co., 583 F.2d 896, 899 (6th Cir.1978), that discretion is not unlimited. This discretion is appropriate because it is often difficult to determine whether a legal conclusion is implicated in the testimony. See, e.g., Owen v. Kerr-McGee Corp., 698 F.2d 236, 240 (5th Cir.1983) ("The task of separating impermissible questions which call for overbroad or legal responses from permissible questions is not a facile one."); Wade v. Haynes, 663 F.2d 778, 783-84 (8th Cir.1981), aff'd sub nom. Smith v. Wade, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983).
 
 
 24
 The best resolution of this type of problem is to determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular. If they do, exclusion is appropriate. See United States v. Hearst, 563 F.2d 1331, 1351 (9th Cir.1977), cert. denied, 435 U.S. 1000, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978) (testimony is not objectionable as containing a legal conclusion where the "average layman would understand those terms and ascribe to them essentially the same meaning intended"). Thus, when a witness was asked whether certain conduct was "unlawful," the trial court properly excluded the testimony since "terms that demand an understanding of the nature and scope of the criminal law" may be properly excluded. See Baskes, 649 F.2d at 478. See also Owen, 698 F.2d at 239-40 (trial court properly excluded testimony on "cause" of the accident when there was no dispute as to the factual "cause" of the accident but only the legal "cause" of the accident); Christiansen v. National Savings and Trust Co., 683 F.2d 520, 529 (D.C.Cir.1982) (inadmissibility of conclusion that defendants held a "fiduciary" relationship to plaintiffs); Strong v. E.I. DuPont de Nemours Co., 667 F.2d 682, 685-86 (8th Cir.1981) (trial court properly excluded expert's testimony that defendant's warnings were "inadequate" and that the product was therefore "unreasonably dangerous"); Stoler, 583 F.2d at 898-99 (trial court properly excluded testimony that a railroad crossing was "extra hazardous," a legal term of art under governing law, since it "amounted to a legal opinion").
 
 
 25
 The precise language of the question put to Dr. Quiroga was whether "Torres had been discriminated against because of her national origin." In concluding that this question called for an improper legal conclusion, we rely on several factors. First, the question tracks almost verbatim the language of the applicable statute. Title VII makes it unlawful for an employer to "discriminate against any individual ... because of such individual's ... national origin." See 42 U.S.C. Sec. 2000e-2. Second, the term "discrimination" has a specialized meaning in the law and in lay use the term has a distinctly less precise meaning. See Ward v. Westland Plastics, Inc., 651 F.2d 1266, 1271 (9th Cir.1980) (witness "incompetent to voice an opinion on whether that or any other conduct constituted illegal sex discrimination").
 
 
 26
 We emphasize that a more carefully phrased question could have elicited similar information and avoided the problem of testimony containing a legal conclusion. The defendants could have asked Dr. Quiroga whether she believed Torres' national origin "motivated" the hiring decision. This type of question would directly address the factual issue of Dr. Malueg's intent without implicating any legal terminology. Cf. Bohannon, 652 F.2d at 731-33.
 
 
 27
 Although we hold that the trial judge should not have admitted this testimony, we conclude that this error was harmless. See Fed.R.Civ.P. 61; Fed.R.Evid. 103(a). First, this error involved only one brief question out of a rather lengthy trial. Second, Torres admitted, upon being impeached by her deposition testimony, that she had previously stated that she did not feel that she had been discriminated against during the interview process. Under the circumstances, we hold that the admission of this testimony containing a legal conclusion was harmless error.[2]
 
 III.
 
 28
 Torres next argues that the trial court improperly precluded her from putting to the jury separate claims that she was subjected to discrimination by virtue of the changed evaluation form and the use of the term "ass" or "asshole" towards her. The trial court ruled that she could argue to the jury that these incidents lended inferential support to her claim that she was denied the promotion because of her national origin but that she could not submit them to the jury as a separate basis for relief. We hold that the district court did not err in so ruling.
 
 
 29
 As to the derogatory language claim, a single instance of the use of the word "ass" or "asshole"--which, we note, is not in itself a racially or ethnically charged term--does not support a claim under Title VII or Sec. 1981. While a continuing use of racial or ethnic slurs would violate Title VII, occasional or sporadic instances of such conduct does not. See Johnson v. Bunny Bread Co., 646 F.2d 1250, 1257 (8th Cir.1981); Cariddi v. Kansas City Chiefs Football Club, Inc., 568 F.2d 87, 88 (8th Cir.1977). Cf. Henson v. City of Dundee, 682 F.2d 897, 904 (11th Cir.1982) (to violate Title VII, sexual harassment "must be sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment"). We hold that the district court correctly ruled that as a matter of law a single incident of using derogatory language, which is not in itself racially or ethnically charged, does not constitute unlawful employment discrimination under Title VII or Sec. 1981. Torres was allowed to argue to the jury that the use of this language toward her evinced a discriminatory intent and that was all to which she was entitled.
 
 
 30
 Much the same is true of Torres' claim regarding the changed evaluation form. On the one hand, the mere downgrading in one out of eight categories in an evaluation form from "outstanding" to "average," where the remaining seven categories contain an "outstanding" rating, cannot, in and of itself, entitle the plaintiff to relief under Title VII or Sec. 1981. On the other hand, such a change in an evaluation form might be evidence of a discriminatory intent to interfere with Torres' chances for promotion. Since the effect of the trial court's ruling was to allow Torres to argue to the jury that the change in the evaluation form constituted evidence of discrimination in the promotional process, Torres obtained from the trial court's ruling all to which she was entitled.
 
 IV.
 
 31
 There remains the defendants' cross-appeal (83-1453) of the district court's denial of their motion for attorney's fees.[3]
 
 
 32
 In Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), the Supreme Court set the standard for awarding attorney's fees to prevailing defendants in Title VII litigation.[4] Under the Christiansburg standard, a prevailing defendant is entitled to attorney's fees only when the plaintiff's claim "was frivolous, unreasonable, or groundless, or ... the plaintiff continued to litigate after it clearly became so." Id. at 422, 98 S.Ct. at 701. The defendants rely primarily upon the admission made by Torres in her deposition that she did not feel she was discriminated against in the interview process. Torres contradicted her deposition testimony, however, at trial. In addition, this is not a case in which the plaintiff has merely shown that she is within a protected class and was not hired or promoted. Instead, Torres asserted the additional facts of her altered evaluation form and the use of derogatory language. Although this is a somewhat close case, we review a district court's ruling on a motion for attorney's fees only for abuse of discretion. See 42 U.S.C. Sec. 2000e-5(k); Christiansburg, 434 U.S. at 421, 424, 98 S.Ct. at 700, 701, 54 L.Ed.2d 648; Reichenberger v. Pritchard, 660 F.2d 280, 288 (7th Cir.1981). We find no abuse of discretion in this case.
 
 V.
 
 33
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The defendants argue that Torres has not preserved this issue with a proper objection. Federal Rule of Evidence 103(a)(1) provides:
 (a) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
 (1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context.
 The defendants rely on that portion of the rule requiring that an objection state "the specific ground." It is indeed true that Torres' counsel did not state his ground. The defendants overlook, however, the last clause of Rule 103(a)(1), which states that objectors must state their ground only when "the specific ground was not apparent from the context." In overruling the objection, the trial judge stated that Dr. Quiroga could "state her opinion on that." It is therefore apparent that the context made the ground of the objection clear. See generally 1 J. Weinstein & M. Berger, Weinstein's Evidence p 103 (1981); 21 C. Wright & K. Graham, Federal Practice and Procedure Sec. 5036 (1977). Cf. Waltzer v. Transidyne General Corp., 697 F.2d 130, 134 (6th Cir.1983) (no offer of proof required under Rule 103(a)(2) when substance of excluded evidence is apparent from context).
 
 
 [2]
 A relatively recent case in this circuit, Davis v. Combustion Engineering, Inc., 742 F.2d 916 (6th Cir.1984), comports with our analysis of this case
 
 
 [3]
 Because we affirm the judgment of the district court, we need not pass on the defendants' second cross-appeal (83-1239), in which they challenge the propriety of certain mid-trial rulings by the district court. Our affirmance of the judgment moots this appeal. We therefore need not discuss its merits or whether it is properly before us. See generally Deposit Guaranty National Bank v. Roper, 445 U.S. 326, 333, 100 S.Ct. 1166, 1171, 63 L.Ed.2d 427 (1980); Electrical Fittings Corp. v. Thomas & Betts Co., 307 U.S. 241, 242, 59 S.Ct. 860, 83 L.Ed. 1263 (1939)
 
 
 [4]
 Although the defendants requested fees under 42 U.S.C. Sec. 1988, this court has recently noted that the Christiansburg standards apply to requests for attorney's fees under Sec. 1988 as well as to requests under 42 U.S.C. Sec. 2000e-5(k). See Smith v. Smythe-Cramer Co., 754 F.2d 180, 183 (6th Cir.1985)