**Susan T. FIGGINS, Plaintiff,**

v.

**ADVANCE AMERICA CASH ADVANCE CENTERS OF MICHIGAN, INC. and Advance America Cash Advance Centers, Inc., Defendants.**

No. 05–10235.

United States District Court,
E.D. Michigan,
Southern Division.

March 27, 2007.

Glen N. Lenhoff, Robert D. Kent–Bryant, Law Office of Glen N. Lenhoff, Flint, MI, for Plaintiff.

James R. Mulroy, II, Lewis Fisher, Memphis, TN, for Defendants.

### ORDER DENYING DEFENDANTS' MOTIONS IN LIMINE

LAWSON, District Judge.

The plaintiff, Susan T. Figgins, filed a five-count complaint alleging that the defendants fired her from her job as store manager because she took FMLA leave, was pregnant, is overweight, and due to her age. The Court previously denied in part the defendants' motion for summary judgment, and the facts of the case are summarized in that opinion. Now before the Court are two motions *in limine* the defendants have filed in anticipation of trial. In their first motion, they seek to exclude evidence regarding the defendants' treatment of other employees, particularly Erica Starkey; opinion testimony from the plaintiff's coworkers on whether the plaintiff was a good worker or experienced discrimination or retaliation; opinion testimony from witnesses on the plaintiff's witness list who were not disclosed during discovery; Dr. Audrey Stryker's expert testimony; and evidence of front pay, back pay, and punitive damages. In their second motion, filed after the deadline established by the case management order, the defendants ask for an order preventing the plaintiff from arguing that the plaintiff was demoted or replaced by Shannon Wol-

schlager; offering evidence of branch manager positions that became available while the plaintiff was disabled and unable to fill them; and excluding expert testimony by Dr. Rao.

The purpose of motions *in limine* has been described by one commentator as follows:

> A formal mechanism for obtaining advance rulings on the admissibility of evidence would seem to serve at least the following ends: (i) facilitate trial preparation by providing information pertinent to strategic decisions; (ii) reduce distractions during trial and provide for a smoother presentation of evidence to the jury; (iii) enhance the possibility of settlement of disputes without trial; (iv) provide some additional insulation of the jury from prejudicial inadmissible evidence; and (v) improve the conditions under which the trial judge must address evidence issues by reducing the need for hasty decisions during the heat of trial.

Report of Kentucky Study Committee, 1989, p. 5, quoted in Lawson, *The Kentucky Evidence Law Handbook,* pp. 33–34 (3d ed.1993). The practice is sanctioned, at least in part, by the Federal Rules of Evidence as found in the injunction "to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury." Fed.R.Evid. 103(c).

■ However, one practical difficulty in ruling on such motions is the absence of context that comes when the challenged evidence is presented with the other proofs at trial. It may be desirable in many cases to defer ruling on objections until trial, as with many of the defendants' evidentiary challenges here. As a consequence, the Court will address each of the defendants' contentions, but will not make "definitive rulings." *See* Fed.R.Evid.

103(a). Each motion and the several matters raised in them are discussed in turn.

## I. Docket No. 30

### A. Evidence of discrimination from witnesses other than the plaintiff

■ The defendants seek to exclude evidence from other employees, especially Erica Starkey, regarding how they were treated by the defendants. The only specific evidence cited in this part of the defendants' motion is evidence that Ms. Starkey was terminated or otherwise discriminated against because of her weight. The defendants state that Ms. Starkey was terminated for serious misconduct. After the termination, Ms. Starkey threatened Ms. LaBeff, who sought a restraining order. The defendants state that all evidence from other employees that they encountered discrimination on account of their weight should also be excluded. The defendants cite Federal Rules of Evidence 401 and 402.

The plaintiff states Erica Starkey witnessed a number of the comments Ms. LaBeff made about the plaintiff's weight, and that testimony is clearly relevant. In addition, the defendants argued in their motion for summary judgment that Ms. LaBeff promoted a number of overweight employees and that Miranda Rogers, another employee, never heard Ms. LaBeff make derogatory statements about the plaintiff. The plaintiff states that she should be permitted to introduce evidence to the contrary. Even the comments about Ms. Starkey's weight are relevant to show Ms. LaBeff's discriminatory animus, she contends. Furthermore, evidence from other employees should not be barred since the defendants have not identified the evidence with sufficient specificity for the plaintiff to respond.

■ The definition of relevant evidence is quite liberal and creates a low threshold for admissibility under Rule 401. The Sixth Circuit has explained:

> The standard for relevancy is "extremely liberal." *Douglass v. Eaton Corp.*, 956 F.2d 1339, 1344 (6th Cir.1992). " '[E]vidence having *any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence' is relevant." *Robinson v. Runyon*, 149 F.3d 507, 512 (6th Cir.1998) (quoting Fed.R.Evid. 401). " '[E]ven if a district court believes the evidence is insufficient to prove the ultimate point for which it is offered, it may not exclude the evidence if it has the slightest probative worth.' " *DXS, Inc. v. Siemens Med. Sys., Inc.*, 100 F.3d 462, 475 (6th Cir. 1996) (quoting *Douglass*, 956 F.2d at 1344).

*United States v. Whittington*, 455 F.3d 736, 738–39 (6th Cir.2006). Testimony from other workers in the defendants' organization that the supervisors who interacted with the plaintiff also treated them in a discriminatory fashion is plainly relevant under Rule 401. If Ms. LaBeff made derogatory statements to Ms. Starkey or anyone else about overweight people, it is "more likely" that Ms. LaBeff harbors animus towards that group of people. Ms. LaBeff's animus towards overweight people is a consequential fact in this case. In *Lamoria v. Health Care & Retirement Corp.*, 230 Mich.App. 801, 584 N.W.2d 589 (1998), *vacated then reinstated by* 233 Mich.App. 560, 593 N.W.2d 699 (1999), the court found a witness' affidavit detailing a manager's disparaging statements concerning overweight people to be admissible: "This evidence of hostile remarks by a supervisory or managerial level employee based on weight ... may be evidence of animus based on a characteristic upon which discrimination is forbidden by the state Civil Rights Act." *Id.* at 810, 584 N.W.2d 589, 584 N.W.2d at 595. If Ms. Starkey should be called to the stand during trial, the defendant may object to the relevancy of the questions asked of her at that time. However, the record presently does not support exclusion of the evidence.

**B. Opinion testimony of plaintiff's workload, competence, qualifications, and performance**

■ The defendants seek to exclude opinion testimony from the plaintiff's co-workers on whether the plaintiff was a good worker, again, especially from Ms. Starkey. The defendants state that Ms. Starkey left the company in early 2004, and the plaintiff worked until August and was not terminated until November, making the evidence irrelevant. Ms. Figgins did not report directly to Ms. Starkey. The defendants state such evidence is not admissible under Rule 701 because the jury can form its own opinion from the evidence; under Rule 403 because its probative value is outweighed by the danger of unfair prejudice; or under 602 because neither Ms. Starkey nor any other coworker was in a position to evaluate the plaintiff's performance.

The plaintiff responds that Ms. Starkey was the plaintiff's area manager from August 2003 through April 22, 2004 and can testify about the plaintiff's performance. Starkey apparently performed monthly audits of branch managers on behalf of the defendant. The plaintiff maintains that during these audits, Starkey had the opportunity to observe the plaintiff's work performance. Starkey purportedly can testify that the plaintiff's buy-back, debt collection, revenue, and held-check numbers were good, and that the plaintiff won several employment-related awards. This is relevant, the plaintiff claims, because the defendants claim that the plaintiff was terminated in part due to job performance.

The plaintiff states that she plans to lay the proper foundation prior to eliciting this testimony. The plaintiff also argues that the defendants have not identified testimony from other employees that they believe should be excluded.

The Court finds that the plaintiff has the better argument. Ms. Starkey was terminated in April 2004, and the plaintiff last worked in August 2004. Assuming that the plaintiff will be able to elicit the foundational testimony as she represents, the four-month period Starkey was away from the workplace is relatively insignificant. The defendants' argument that the evidence is barred by Rule 403 lacks merit because the defendants have failed to identify any unfair prejudice that burdens the evidence. *See Dresser v. Cradle of Hope Adoption Center, Inc.*, 421 F.Supp.2d 1024, 1030 (E.D.Mich.2006). The defendant, of course, is free to argue to the jury that the plaintiff's performance declined after Ms. Starkey was fired and therefore Ms. Starkey's testimony should be disregarded. However, Ms. Starkey will be permitted to testify to what she observed if the plaintiff lays the proper foundation.

## C. Opinion testimony of whether discrimination occurred

█ The defendants seek to exclude opinion testimony from the plaintiff's coworkers on whether the plaintiff experienced discrimination or retaliation under Rules 701 and 403. The defendants believe that this is an issue for the jury to decide. In addition, the defendants argue that such testimony would be conclusory and not based on personal knowledge, and would be unduly prejudicial. The plaintiff responds that coworker testimony regarding whether weight motivated her termination is permitted under *Torres v. County of Oakland*, 758 F.2d 147 (6th Cir.1985), because it does not call for a legal conclusion.

█ "Fed.R.Evid. 701 permits lay opinion testimony where it is '(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.'" *United States v. Ahmed*, 472 F.3d 427, 434 (6th Cir.2006). Moreover, the "foundational requirement of personal knowledge" is satisfied when the witness was "privy to the details" of the events in question. *Torres*, 758 F.2d at 149. Although the Sixth Circuit "disfavors lay opinion testimony when it consists of a legal conclusion," that court "also 'accord[s] a relatively wide degree of discretion in admitting or excluding testimony which arguably contains a legal conclusion' ... because it is often difficult to determine whether a legal conclusion is implicated in the testimony." *Ahmed*, 472 F.3d at 434 (citing *Torres*, 758 F.2d at 150).

In *Torres*, the court held that the question whether "Torres had been discriminated against because of her national origin" called for an improper legal conclusion. But the court noted that "a more carefully phrased question could have elicited similar information and avoided the problem of testimony containing a legal conclusion. The defendants could have asked Dr. Quiroga whether she believed Torres' national origin 'motivated' the hiring decision. This type of question would directly address the factual issue of Dr. Malueg's intent without implicating any legal terminology." *Torres*, 758 F.2d at 151. Whether such testimony would be admissible or not in this case depends on the questions the witnesses are asked.

Of course, the plaintiff also must show that the witness has personal knowledge. However, the import of Rule 701 is that

the jury is assisted in determining what happened when a witness expresses conclusions drawn from perceived facts in areas that do not require specialized knowledge. In *Torres,* the court acknowledged "that it is [not] beyond the ken of an ordinary person to infer from another's outward actions what his inward feelings are regarding a third person's national origin." *Torres,* 758 F.2d at 150. Depending on the foundation laid, the same may be said for a person's bias toward or against overweight people. Witnesses who observed the plaintiff and Ms. LaBeff interacting may satisfy those requirements, and their opinions may be admissible.

### D. Preclusion of Dr. Audrey Stryker's testimony

 The defendants argue that Dr. Stryker was not identified in Rule 26(a) disclosures or through interrogatory responses. The defendants also argue that Dr. Stryker should not be permitted to offer any expert testimony about the plaintiff's condition under *Daubert* because any conclusions drawn by Dr. Stryker were based solely on information given to her by the plaintiff. However, the plaintiff identified "Women's OB/GYN," where Dr. Stryker works, in her interrogatory answers, attached as exhibit 5 to the plaintiff's motion response. Dr. Stryker treated the plaintiff during the pregnancy at issue. The plaintiff represents that she does not plan to call Dr. Stryker in her case in chief but may call her if the defendant raises an issue regarding the plaintiff's medical condition. The defendants argument that the Dr. Stryker cannot testify because all of her information came from the plaintiff is perhaps creative, but it is unconventional. Such a rule would prevent virtually all doctors from testifying when medical history comes only from the patient, which is often the case. The Rules of Evidence ascribe a measure of trustworthiness to such recitations with no requirement that medical history sourced to the patient be verified independently. *See* Fed.R.Evid. 803(4). The defendants' motion will be denied on this ground.

### E. Evidence or arguments related to punitive damages

 The defendants argue that the plaintiff should not be permitted to mention punitive damages because her complaint does not pray for such damages, Ms. LaBeff did not have the requisite management authority to impute liability for her actions to the defendants, and the defendants made good faith efforts to comply with the law by having an antidiscrimination policy and a hotline for employees to call. The defendants assert that a plaintiff must plead a claim for punitive damages under Federal Rule of Civil Procedure 9(g), which states that "special damages" must "be specifically stated." In addition, to obtain punitive damages under Title VII, the defendants state that the plaintiff must plead malice or reckless indifference to federally protected rights.

The plaintiff responds that punitive damages are not special damages under Rule 9(g). Even if that were the case, the purpose of Rule 9 is to provide notice. The defendants had notice that the plaintiff was seeking punitive damages, as noted in defendants' affirmative defenses, which mention punitive damages in three places and state "Defendant avers that Plaintiff's claims for punitive damages are barred because she cannot prove by clear and convincing evidence that Defendant acted with actual malice." Defs.' Answer, Affirmative Defenses at ¶ 14. The plaintiff indicated that she was seeking punitive damages in her Rule 26 disclosures, attached to her response as exhibit 4. The plaintiff also states that Ms. LaBeff was the regional director of operations for region 13, division 2, and was in charge of

many stores. Furthermore, the plaintiff states the mere fact that the defendant had an equal employment opportunity policy is not enough; it must take good faith efforts to implement such a policy to avoid punitive damages, which it did not.

Rule 9(g) indeed does require a party specifically to plead "special damages.".

> Special damages are such as result from some cause not notified to the defendant by the very description of the injury complained of, as necessarily resulting from it. Any fact which rendered it more hurtful to the plaintiff than it would have been to any other person, under the same circumstances set forth, is a special damage; and, consequently, it cannot be given in evidence, unless specially set forth in the declaration. The object of this rule is to prevent surprise.

*Wade v. Leroy,* 61 U.S. 34, 40–41, 20 How. 34, 15 L.Ed. 813 (1857). The Michigan courts have explained more recently:

> Special damages are those that are unusual for a type of claim. 1 Longhofer, Michigan Court Rules Practice (5th ed), § 2112.11, p 311:
>
> *Special damages are those damages that are the natural but not the necessary consequence of the defendant's conduct* (in contrast to general damages, which are the damages proximately resulting from the defendant's conduct). *That is, special damages are those which are unusual given the type of claim, and thus might surprise the opponent if not specifically pleaded.* A clear example is a claim for attorney fees. A claim for exemplary damages is another example. Obviously the line between special and general damages is not always clear, and prudence dictates pleading such items of damages when in doubt. [1 Dean & Longhofer, Michigan Courts Rules Practice (4th ed), § 2112.11, p 295 (emphases added; footnotes omitted).]

*Fleet Business Credit, LLC v. Krapohl Ford Lincoln Mercury Co.,* 274 Mich.App. 584, —— N.W.2d ——, 2007 WL 686629 (Mich.App.2007).

Punitive damages, commonly sought and occasionally awarded in Title VII cases, are not thought to fall into the category of "special damages" as a general rule. The Court has found no Sixth Circuit cases on the subject. However, an unpublished Fifth Circuit case has held that punitive damages are not special damages:

> Jani–Kare argues that the district court erred in instructing the jury on the availability of punitive damages, noting that Schexnayder did not specially plead those damages pursuant to Fed. R. Civ. Proc. 9(g).... Initially we note that Rule 9(g) does not mention punitive damages, nor does it define the "special damages" for which special pleading is required. Jani–Kare cites no Fifth Circuit (nor any circuit) precedent to support its position that punitive damages must be pled with specificity. Regardless, as the district court noted, Jani–Kare received ample actual notice before trial that Schexnayder was seeking punitive damages. Jani–Kare also implicitly recognized the possibility of punitive damages in its notice of removal to federal district court. There, Jani–Kare noted that Schexnayder asserted a Title VII claim; at the time of removal, punitive damages were a permissible statutory remedy for Title VII claims. See 42 U.S.C. §§ 1981a(a)(1), (b)(1). The district court did not abuse its discretion by including the punitive damages component in the jury interrogatories.

*Schexnayder v. Bonfiglio,* 167 Fed.Appx. 364, 367 (5th Cir.2006) (unpublished). An unpublished Illinois district court case came to the same conclusion:

> Defendant contends that Plaintiffs' punitive damages request in Count II constituted "special damages," which trig-

gered the 9(g) pleading requirement.... [A] review of Seventh Circuit case law reveals that *punitive* damages are distinct from *special* damages. In *Neal v. Honeywell, Inc.,* 191 F.3d 827, 830 (7th Cir.1999), the Seventh Circuit explained the meaning of "special damages." It stated:

> But what exactly are special damages? The phrase is an old one: *"Special,* as contra distinguished from *general* damage, is that which is the natural, but not the necessary, consequences of the act complained of." Whether a particular kind of injury gives rise to "special" damages thus depends on the tort committed. The usual consequences of a wrong are "general" damages, and unusual consequences are "special."

In short, special damages are a type of consequential or compensatory damages. Compensatory damages (and consequently special damages) are entirely distinct from punitive damages, which are intended solely to punish the defendant or stand as an example for similar wrongdoers. *See Brown & Williamson Tobacco Corp. v. Jacobson & CBS, Inc.,* 827 F.2d 1119, 1137 (7th Cir.1987) ("The purpose of punitive damages, of course, is to punish the defendant for the improper conduct and to deter him from any future transgressions."). Fed. R.Civ.P. 9(g) does not govern Plaintiffs' claim for punitive damages since punitive damages are not special damages. *Maglione v. Cottrell, Inc.,* 2001 WL 946189, *2 (N.D.Ill. Apr.27, 2001). An Alabama district court has also held that punitive damages are not special damages: "Punitive damages are not special damages, *Fidelity–Phenix Fire Ins. Co. v. Murphy,* 226 Ala. 226, 146 So. 387 [1933], and need not be specially stated as required by Rule 9(g) of the Federal Rules of Civil Procedure." *Nelson v. G.C. Mur-*

*phy Co.,* 245 F.Supp. 846, 847 (N.D.Ala. 1965).

A district court in Florida came to a contrary conclusion in *dictum:* "Rule 8 merely requires that the complaining party provide 'a short, plain statement of the claim showing that the pleader is entitled to relief,' while Rule 9(g) provides that items of special damages, such as punitive damages, are to be specifically pleaded." *Kingston Square Tenants Ass'n v. Tuskegee Gardens, Ltd.,* 792 F.Supp. 1566, 1579 (S.D.Fla.1992). However, the Court finds the reasoning of *Maglione* and *Schexnayder* more persuasive. Punitive damages are not special damages and therefore need not be pleaded with specificity under Rule 9(g). The defendants had notice of the plaintiff's claim for punitive damages from the very beginning of this litigation, as demonstrated by their affirmative defenses.

■ To the extent that the defendants are arguing that the facts are insufficient to allow the plaintiff to seek punitive damages from the jury, that argument must be rejected because it should have been raised in a motion for summary judgment. In *Provident Life v. Adie,* 176 F.R.D. 246 (E.D.Mich.1997), the court denied the plaintiff's motion *in limine* to preclude the defendant from raising two defenses at trial. The court held that a motion *in limine* was the improper procedural vehicle to make this challenge:

> At this time, there is a factual question as to whether Provident had actual knowledge of these defenses at the time it denied Dr. Adie benefits. Dr. Adie's motion *in limine* is not the appropriate vehicle for resolving such a factual question. Motions *in limine* typically involve matters which ought to be excluded from the jury's consideration due to some possibility of prejudice or as a result of previous rulings by the

court.... If Dr. Adie wanted to preclude Provident from raising these defenses at trial because there was no genuine issue of material fact as to them, then he should not have filed a motion *in limine* on the eve of trial, but instead should have filed a summary judgment motion pursuant to Federal Rule of Civil Procedure 56.

*Id.* at 250. The deadline for filing dispositive motions in this case was April 14, 2006. This motion *in limine* was not filed until June 1, 2006. The defendants did file a motion for summary judgment, but their argument regarding factual support for punitive damages was not included in that motion. This part of the motion will be denied.

### F. Limitation of evidence of front and back pay due to failure to mitigate

■ The defendants argue that the plaintiff did not mitigate her damages and therefore should be prevented from recovering back pay after September 2005. The plaintiff responds that it is for the jury to decide whether she has mitigated her damages or not as far as back or front pay go. The plaintiff has worked various jobs since she was terminated. As with the argument above regarding punitive damages, any argument that about the facts of mitigation should have been brought in the summary judgment motion. There appears to be a fact dispute on the mitigation issue. This part of the motion will be denied.

### G. Exclusion of evidence of back pay and front pay

■ The defendants argue that the back pay and front pay under the FMLA are forms of equitable relief, so the Court must first determine whether the plaintiff should be reinstated before admitting evidence of front or back pay. The plaintiff responds that the Court need not determine the reinstatement issue before letting in evidence of front pay or back pay. The Court must make that determination only before sending the front pay issue to the jury.

■ The Court agrees that back and front pay amount to equitable relief, and the determination of *whether* the plaintiff is entitled to such relief must be made by the court. *See Bordeau v. Saginaw Control & Engineering, Inc.,* 477 F.Supp.2d 797 (E.D.Mich.2007). The Court does not see how that determination can be made, however, in the absence of evidence on the point, which is what the defendants seek to exclude. Moreover, the rule in this circuit is that the *amount* of back or front pay is to be determined by the jury. *See id.* at 801 (citing *Arban v. West Publishing Corp.,* 345 F.3d 390 (6th Cir.2003)). Front pay is a substitute for reinstatement. *Roush v. KFC Nat'l Mgmt. Co.,* 10 F.3d 392, 398 (6th Cir.1993). The Court's decision on whether front pay is appropriate "must ordinarily precede its *submission of the case to the jury.*" *Id.* at 398–99 (emphasis added). But reinstatement is "not appropriate in every case, such as where the plaintiff has found other work, where reinstatement would require displacement of a non-culpable employee, or where hostility would result." *Roush,* 10 F.3d at 398. The court believes it is appropriate to receive evidence on this aspect of the plaintiff's damages and submit appropriate questions to the jury. The Court ultimately will determine whether front pay is an appropriate remedy and adjust the judgment based on the jury's response to the questions on the verdict form. However, this part of the motion *in limine* will be denied.

### II. Docket No. 31

### A. Evidence that the plaintiff was replaced by Shannon Wolschlager

■ The defendants state the plaintiff was replaced by Christine MacKenzie, not

Ms. Wolschlager, and the defendants argue that the plaintiff should not be able to offer evidence otherwise. According to the evidence submitted on the summary judgment motion, apparently Ms. Wolschlager had the plaintiff's job between the plaintiff and Ms. MacKenzie. However, at the time the plaintiff was able to come back to work, Ms. MacKenzie was in the position. Ms. Wolschlager is slim, and Ms. MacKenzie is overweight. The defendants state it would be misleading to the jury to argue that Ms. Wolschlager replaced the plaintiff. The plaintiff counters that Ms. Wolschlager replaced the plaintiff while she was out on leave, which is relevant to show Ms. LaBeff' s hostility towards the plaintiff.

The Court agrees that evidence of hiring Ms. Wolschlager is relevant to the issue of the defendants' animus toward overweight people. There is no evidence that Wolschlager's assumption of the plaintiff's position was intended to be temporary. In addition, it occurred immediately after the plaintiff went out on leave even though the plaintiff's position had been left unfilled during her previous pregnancy. This evidence has some tendency to render more likely the proposition that the plaintiff was not allowed to return to work after her pregnancy leave because of unlawful discrimination. Nor is the evidence confusing. The defendants are able to argue that no weight should be ascribed to Ms. Wolschlager's hiring for all the reasons advanced above. The danger of jury confusion does not substantially outweigh the relevance of this evidence.

This part of the second motion will be denied.

## B. Evidence that the plaintiff was demoted

■ The defendants state that the plaintiff was never demoted. She held the position of manager until she was termi-nated. The plaintiff states that when she attempted to return to work, she was told that only a floating manager position was available. She claims that such a position is a demotion, and she should be able to introduce that evidence. The plaintiff insists that it is relevant to show that Ms. LaBeff had no intention of returning the plaintiff to a branch manager position.

Once again, the challenged evidence has a bearing on a disputed fact issue. There is a legitimate basis to argue that a change in position to a floating manager amounts to adverse employment action. The question is whether there will be evidence from which a jury could conclude, "from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances," that the change from a permanent store manager to a floating manager was materially adverse. *Burlington Northern and Santa Fe Ry. Co. v. White,* — U.S. —, —, 126 S.Ct. 2405, 2417, 165 L.Ed.2d 345 (2006) (internal quote marks omitted) (quoting *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)). Here, the plaintiff has offered cogent reasons why such is the case, and the jury ought to be able to consider the evidence. The defendants' insistence that such an inference should not be drawn does not render the evidence inadmissible. This part of the motion will be denied. The plaintiff certainly should be permitted to testify that when she tried to return to work she was not permitted to return to her previous position and was instead only offered a less favorable position.

## C. Evidence of other branch manager positions

■ The defendants argue that the plaintiff should not be permitted to introduce evidence of branch manager positions that became available while she was dis-

abled and unable to return to work. The plaintiff states that this evidence is relevant because Ms. LaBeff concealed from the plaintiff that other branch manager positions became available, which shows that Ms. LaBeff did not intend to allow the plaintiff to return to such a position.

As discussed in the summary judgment opinion, the plaintiff has asserted that had she known of the availability of other positions, she could have obtained medical clearance from her physician. The plaintiff claims that she repeatedly called Ms. LaBeff to inquire about returning to her job, and Ms. LaBeff told her, falsely she claims, that no positions were available. If there were such positions available, a jury could infer that LaBeff harbored some type of animosity towards the plaintiff. The evidence is relevant, and this part of the motion will be denied.

### D. Testimony of Dr. Rao

■ The defendants contend that the plaintiff identified a "Dr. Row" in initial disclosures with no first name and has now listed "Dr. Rao" on her witness list; the plaintiff failed to answer interrogatories regarding Dr. Row or Dr. Rao; and the plaintiff never disclosed any expert opinion from this person. The plaintiff states that she identified Dr. Rao in an interrogatory answer. The plaintiff represents that she does not intend to call Dr. Rao unless an issue arises with regard to the plaintiff's medical condition.

Based upon the plaintiff's representation, this part of the motion will be denied. The plaintiff's interrogatory responses list Dr. Rao and his or her address. In addition, at her deposition, the plaintiff told the defendants that she was treated by Dr. Rao. The defendants have had notice of this treating physician, and the plaintiff will be permitted to call the doctor as a rebuttal witness if the proofs call into question the plaintiff's medical condition.

### III.

The defendants have not established that the evidence they seek to exclude is inadmissible.

Accordingly, it is **ORDERED** that the defendants' motions *in limine* [dkt # s 30, 31] are **DENIED**.