**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0313n.06

No. 11-1009

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**_Mar 21, 2012_**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Western |
| ROBERT FEALA, | ) | District of Michigan |
| | ) | |
| Defendant-Appellant. | ) | |

Before:     KEITH, MARTIN, and BOGGS, Circuit Judges.

**BOGGS, Circuit Judge.**  Robert Feala was indicted on sixteen counts of making a false statement with the intent to deceive an insurance regulatory agency, in violation of 18 U.S.C. § 1033. Feala was convicted on all counts after a jury trial.  Feala filed an untimely motion for a judgment of acquittal nearly two months later, which the district court denied on the merits.  Feala was sentenced to twenty-four months of imprisonment for each count, with the sentences to run concurrently.  There are two issues on appeal.  First, Feala objects that witnesses at trial improperly offered a legal conclusion as to his guilt.  Second, Feala argues that the district court erred in denying his post-verdict motion for a judgment of acquittal.  Both claims are without merit, and we affirm.

**I**

Surplus-line insurance policies are generally purchased for certain high-risk businesses that standard insurance carriers will not cover in the state of Michigan.  Under Michigan law, an

insurance broker can sell surplus lines if the broker certifies, using form FIS 0269 that is submitted to the Michigan Insurance Bureau, that either (a) the customer insisted on buying insurance from an unauthorized, ineligible company, or (b) the broker first attempted to place the insurance with three named authorized or eligible insurers. Mich. Comp. Laws § 500.1950.

Feala, who was not licensed to sell insurance in Michigan, organized the sale of surplus-line insurance in Michigan through two corporations. Feala formed the first corporation, Whitcomb & Company, and paid Gene Whitcomb to be his agent. The United States presented evidence that Whitcomb did not know the names of the companies writing the insurance, and—after defendant obtained a rubber stamp of Whitcomb's signature—did not see the policies that were issued.

Feala formed a second company, Vanguard Insurance Placement, Inc. to act as a successor to Whitcomb & Company. Feala directed Jill Stekel to obtain a license to sells surplus insurance for the new firm. After 2002, virtually all surplus-insurance policies sold by Vanguard were written by a company called Novus Centuriae. Neither Whitcomb nor Stekel knew where Novus Centuriae was located. Even Thomas Charboneau, Feala's personal attorney and the attorney for Novus Centuriae, did not know who owned Novus Centuriae.

In 2002, Sara Walter was injured during a melee at a Flint night club that was insured by Novus Centuriae. The owner of the club assigned Walter the rights to his Novus Centuriae policy. Attempting to collect a $500,000 judgment from the policy, John Nickola, Walter's attorney, deposed Whitcomb, Stekel, and Nate Feala (defendant's son). The depositions revealed that Novus Centuriae was an investment holding company, formed by Feala in the island nation of Nevis, with no assets.

Nickola reported this information to the Michigan Insurance Bureau and the FBI. An investigation revealed that between 2005 and 2008, Whitcomb and Vanguard filed thousand of forms FIS 0269—bearing Stekel's rubber stamp—reporting that attempts had been made to place the insurance with Hartford Insurance Company, Lloyd's, and American Fellowship, before placing it with Novus. Stekel had not made any such attempts at any time, nor had Whitcomb before her. In 2009, the Bureau ordered Vanguard and Novus Centuriae to stop selling insurance policies in Michigan.

Feala was indicted on sixteen counts of making a false statement with the intent to deceive an insurance regulatory agency, in violation of 18 U.S.C. § 1033. This timely appeal follows his conviction.

## II

Feala first argues that the district court erred in admitting testimony that conveyed to the jury "that the matter had been prescreened by attorneys in various lawsuits and administrative proceedings, and that the defendant was determined to have been acting 'illegally.'" This claim is without merit.

## A

The parties dispute whether this issue was raised in the district court, and differ on what the appropriate standard of review is. Feala concedes that he timely objected to *some* of the testimony, and argues that both "error and plain error" is present. On the second day of trial, prior to the testimony from Attorney John Nickola—who represented Sara Walter during her civil case, and deposed Whitcomb, Stekel, and Nate Feala—Feala's counsel objected to Nickola's testimony. Feala

was concerned that Nickola "will simply create chaos and confuse the jury, confuse the issues, and not have anything, any relevant information relating to the 16 counts in the Indictment."

Counsel seems to have been concerned about Nickola testifying as to the nature of Feala's conduct with respect to the Walters case: "And I'm very concerned that that would paint potentially Mr. Feala in a light of, Jeez, here is this insurance company, this claim allegedly wasn't paid, and as a result of that claim not being paid and these forms were improperly filed, therefore, he must be a bad guy and as a result it's improper."

Counsel was willing to stipulate to the authenticity of the transcripts of Nickola's depositions, without having Nickola testify. The district court overruled this objection: "I think this is relevant testimony as proffered because the government does have to demonstrate both intent and materiality, and they go hand in hand to some extent." The court conceded "[t]hat answers from Mr. Nickola, even if not directly elicited in the questions from [the government], will overstep simple foundational matters, will include *characterizations* that Mr. Nickola wants to put on this, and I think we can deal with that if and when that arises." *Ibid.* Here the district court seems to acknowledge that Nickola's testimony could inadvertently characterize Feala in a negative manner—though not specifically alluding to a legal opinion of guilt. However, the court remained open to considering objections during trial if Nickola overstepped the proper bounds of his testimony.

On appeal, the United States counters that Feala did not raise the same objection below that he does now—"no objection was made that [the witness, Attorney] Nickola would testify 'that the defendant was determined to have been acting 'illegally.'" *Appellee Br.* at 8. The United States contends that none of the objections raised dealt with whether a witness was "rendering an opinion

on the legality of defendant's conduct." As such, the government argues that plain-error review is appropriate.

With respect to Nickola's testimony, we will construe counsel's objection as an objection against Nickola testifying that Feala was acting illegally. Because the objection was raised, the district court's decision is reviewed for an abuse of discretion. *Morales v. American Honda Motor Company, Inc.*, 151 F.3d 500, 515 (6th Cir. 1998). Counsel did not offer any objections to the testimony of Michigan Insurance Board Attorney Randall Gregg and Whitcomb. These issues are reviewed for plain error. *United States v. Stonefish*, 402 F.3d 691, 697 (6th Cir. 2005). Under either standard, however, the district court's decisions to permit the testimony of Nickola, Gregg, and Whitcomb were not in error.

**B**

Witnesses testimony that contains "a legal conclusion" may "convey[] the witness' unexpressed, and perhaps erroneous, legal standards to the jury. This 'invade[s] the province of the court to determine the applicable law and to instruct the jury as to that law.'" *Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985) (citations omitted). This court has found that "[t]he best resolution of this type of problem is to determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular." *Id.* at 151. Based on this standard, the district court did not err—either as an abuse of discretion or as plain error—in permitting the testimony of Whitcomb, Nickola, and Gregg.

**1**

When asked whether Whitcomb would have continued to do business with Feala had he known the nature of the operation, Whitcomb answered, no, because "it's illegal." Defense counsel did not object. The United States argues that Whitcomb was not an attorney, and his personal opinion that some conduct was illegal was that of a layman. Feala cites no precedent to counter that Whitcomb—not an attorney—was prevented from offering a lay opinion based on his personal observations and thoughts. Whitcomb was merely stating how he perceived Feala's operation, and why he would have chosen not to do business with him. He was not offering any opinion on Feala's guilt in the case before the jury. The admission of this testimony did not constitute plain error**.**

**2**

Nickola, the attorney who represented Sarah Walter, was asked by the government to explain what an investment holding company is. He answered that "it could be anything, including a shell corporation." Defense counsel objected, and the trial court struck the latter part of the answer. The admission of the former part—"it could be anything"—does not constitute an abuse of discretion. It offers no opinion on the legality of the conduct.

Later, Nickola testified that after he conducted the depositions, he reported "this situation to the Michigan Insurance Bureau and the FBI," and provided the insurance bureau with copies of the depositions and documents. The United States argues that though Nickola was a lawyer, he was not offering his professional legal opinion. Rather he simply explained what he did after conducting the depositions.

Nickola merely testified about what he did after he discovered the evidence from the depositions. Reporting allegations to a government agency does not equate to opining on whether the conduct was legal or illegal, even if it raises a specter of suspicion. In any event, it was not an abuse of discretion for the district court to admit this testimony.

**3**

Randall Gregg, an attorney with the Michigan Insurance Bureau testified, without objection, that after receiving Nickola's report, he reviewed the forms FIS 0269 and 0270 filed by Whitcomb and Vanguard with the insurance bureau:

> We did. Initially after reviewing, we came to realize that Vanguard Insurance Placement, Inc., was not properly licensed in Michigan, and so we issued a cease and desist order to stop them from selling. Subsequent to that we realized that obviously based on this bankruptcy petition that Core States Management was financially insolvent. In addition, based on Mr. Feala's own testimony, Novus Centuriae had no assets, so we reached the conclusion that neither one of those entities was financially stable, and, therefore, they could not sell surplus lines insurance in the State of Michigan. And we issued a cease and desist order against both those entities later that year.

Defendant argues that by saying that Vanguard was not properly licensed, Gregg was opining on the legality of selling insurance without a license. Defendant argues that since the judge's instruction to the jury did not say that a person engaged in the "business of insurance" must be licensed, it was error for Gregg to effectively instruct the jury that there was such a requirement.

The United States counters that this testimony was offered to explain to the jury how Gregg came to learn about Feala's conduct, and what he did after he learned about it. The United States makes two arguments.

First, that this testimony, offered without objection, simply informed the jury about the steps Gregg took after receiving Nickola's report. Second, the government argues that even if any of the three statements made by Gregg constitute legal opinions,[1] as an attorney working for the insurance bureau, Gregg was certainly qualified to make those legal determinations.

The first position is an adequate basis to affirm. Gregg was never qualified as an expert to testify about insurance law according to the requirements of Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Rather, he provided testimony to establish a foundation about his position, and what he did. The district court did not commit plain error in admitting this testimony. Gregg simply stated that Vanguard was not licensed to sell insurance in Michigan. Although this is seemingly a legal conclusion, it is more accurately characterized as a statement of fact. Further, it is fairly commonly held knowledge that in order to sell insurance, one must be licensed. Similarly, while what constitutes financial insolvency may be subject to reasonable debate, Gregg simply observed that Core States Management and Novus Centuriae had no assets. To find that these statements are not legal conclusions, and are thus admissible, is not plain error.

Feala waived any objection to testimony elicited by his lawyer from Gregg on cross examination. *United States v. Abdullah*, 162 F.3d 897, 904 (6th Cir. 1998) ("defendant's own attorney elicited the testimony to which he now objects"; "we cannot conclude that reversible error occurred").

---

[1] First, "Vanguard Insurance Placement, Inc., was not properly licensed in Michigan"; second, "Core States Management was financially insolvent"; and third, "based on Mr. Feala's own testimony, Novus Centuriae had no assets."

**III**

Defendant argues that the district court erred in denying his motion for a judgment of acquittal notwithstanding the verdict. In reviewing the denial of an acquittal motion, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This court will not independently judge the credibility of the witnesses, and all reasonable inferences will be drawn in the government's favor. *United States v. Beverly*, 369 F.3d 516, 532-33 (6th Cir. 2004).

First, Feala contends that "the evidence was insufficient that the defendant 'caused' the filing of the particular forms in question." *Appellant Br.* at 26. His argument is effectively a sufficiency challenge, as he argues that "no rational trier of fact could have found that the crime occurred in this case." *Ibid.* Numerous witnesses testified consistently that Feala established and directed aspects of the actions of Whitcomb and Vanguard. Feala admitted as much in his civil deposition—which was introduced into the record—stating that he chose to conduct business in Michigan, that he formed Novus Centuriae in Nevis, and that Novus Centuriae had no assets. Sabrina Hubbard, who actually filed the insurance forms with the Michigan Insurance Bureau, placed a rubber stamp of Jill Stekel's name on them because Feala instructed her to do so. Whitcomb testified that, even though American Fellowship did not issue surplus-line insurance, Feala told him to include it on the forms because they "just needed a third company on the form so that it could go through." There is more than enough evidence in the record to allow a rational trier of fact to determine that Feala caused the forms to be filled out.

Second, Feala argues that "if a false statement appeared on form FIS 0269, it was not a 'knowing' false statement for purposes of criminal liability." *Appellant Br.* at 26-27. Feala maintains that the errors made at his direction on thousands of forms were consistent with typographical errors—just like "checking the wrong box." However, the errors were not limited to checking the wrong box. Rather, the multitude of forms each falsely listed three "authorized and eligible unauthorized" insurers that Whitcomb or Vanguard had attempted "to place this insurance with" before placing it with an unauthorized and ineligible "surplus lines" insurer. Listing these three insurers permitted Feala to continue selling insurance from Novus Centuriae without tipping off the authorities. There is more than enough evidence in the record for a rational trier to find that the false statements made on the forms were made knowingly.

Third, Feala contends that any false statements on form FIS 0269 did not constitute "material misstatement[s]." *Id.* at 27. Feala would have the jury believe that he could have filled the forms out differently, if he had checked the box stating that the insured "insisted the insurance be placed with an unauthorized insurer," and continued to sell Novus Centuriae insurance on that basis. *Id.* at 27-30. In other words, he could have committed a different type of fraud—there was no evidence that any of his clients so insisted. The false statements were indeed material, because they prevented the Michigan Insurance Board from realizing that something was amiss, and resulted in the Board not investigating Feala's sale of surplus lines for years. As soon as the Board realized that the forms were filled out improperly, it issued a cease-and-desist order. There is sufficient evidence in the record for a rational trier of fact to find that the false statements were material misstatements.

The district court did not err in denying Feala's post-trial motion for a judgment of acquittal.

**IV**

The judgment of the district court is AFFIRMED.